477 So.2d 1261 (1985)
Cleo BRIDGES
v.
HOOD MOTOR COMPANY, INC. and L.A.D.A. Self-Insurers Fund.
No. CA-3644.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1985.
Rehearing Denied November 26, 1985.
*1262 William S. Vincent, Jr., Robert M. Braiwick, Jr., New Orleans, for plaintiff-appellant.
Iddo Pittman, Jr., Hammond, for defendant-appellee.
Before GARRISON, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
Plaintiff, Cleo Bridges, appeals a judgment which dismissed his petition for worker's compensation benefits. In his reasons for judgment the trial judge concluded that one of plaintiff's injuries was not caused by the work related accident, and that another did not appear to be disabling. We reverse the judgment of the trial court and render judgment on the record.
Defendant, Hood Motor Company, Inc., employed plaintiff as a tow-truck driver/operator. While engaged in the duties of his employment plaintiff was injured when a car struck his tow-truck. Plaintiff briefly lost consciousness, and suffered injuries to his head, neck, back, shoulder and arm.
An ambulance transported plaintiff from the scene of the accident to Hood Memorial Hospital. The attending hospital physician noted no abrasions or lacerations, but found a large, soft hematoma of the left scalp area. He also noted that plaintiff was experiencing pain in his neck, and held his neck rigid.
Hospital X-rays of plaintiff's cervical spine revealed spurring at C5-6 and a "clay shovelers" type fracture involving the spinous process of C6. X-rays of the left shoulder were negative. X-rays of the cervical spine area also revealed the possible fracture of the posterior aspect of plaintiff's right first rib.
Plaintiff remained in the hospital for two days following the day of the accident. He was fitted with a cervical collar and discharged to be treated as an out-patient. He was also referred to an orthopedist for consultation.
Dr. Fambrough, an orthopedic surgeon, saw plaintiff for the first time five days after the day of the accident. Dr. Fambrough did not testify. The parties stipulated to a collection of letters from him to Hood Motor Co. reporting on plaintiff's status from February 27, 1984, through June 1, 1984, the last day he saw plaintiff. Also included are two summary letters dated June 20, 1984, and January 23, 1985, from Dr. Fambrough to Adjustco.
Dr. Fambrough's first letter clearly indicates that plaintiff was referred to him for evaluation of plaintiff's cervical spine. Plaintiff testified that Dr. Fambrough never touched him, but conducted his evaluation by discourse with the plaintiff during each of the office visits. The letters do not contradict this.
*1263 On first evaluation Dr. Fambrough concluded that plaintiff's cervical spine demonstrated relative stability with the soft cervical collar, and recommended that plaintiff continue to wear it. He prescribed some medication and instructed plaintiff to return in two weeks. He noted that plaintiff would be unable to work.
Two weeks later plaintiff returned to Dr. Fambrough who found him to be doing quite well symptomatically. Dr. Fambrough suggested that plaintiff start weaning himself from the collar, and that he might soon be able to return to work. Two weeks later plaintiff returned to Dr. Fambrough still complaining of musculoskeletal pain in his neck. The doctor prescribed some additional medication and referred plaintiff for some physical therapy modalities. The doctor instructed plaintiff to return in two weeks at which time he hoped plaintiff could return to his regular duties.
On the next visit, April 10, 1984, plaintiff stated that he continued to experience discomfort in his neck and shoulder. X-rays revealed no instability in plaintiff's cervical spine. The doctor advised plaintiff to resume his normal activities, and to return for a followup evaluation in two weeks.
Plaintiff returned to see Dr. Fambrough on May 4,1984, just over three weeks after his prior visit. Plaintiff stated that while assisting a carpenter in moving some two-by-fours at his home, he thought he suffered a stroke. His arms went numb and pain increased causing him to stay in bed for a couple of weeks. Dr. Fambrough referred plaintiff to a neurologist and instructed him to return in two weeks.
Plaintiff visited the neurologist on May 10, 1984, and May 18, 1984. The neurologist's report is in the record. The May 18, 1984 letter summarized the findings of the neurologist.
Dr. Adams thought he had three problems basically one of which was a post concussion type headaches as well as a contusion of the labyrinthine apparatus causing some dizziness. These are directly related to his injury. He also felt he had a carpal tunnel syndrome of the right wrist. He suggested attempts at conservative treatment of this. This is a compression of the median nerve in the wrist causing the numbness and pain in the wrist and fingers. We will put him in a wrist immobilizer and put him on some oral steroids to see if this won't alleviate some of his symptoms. We will see him back in two weeks for followup. If he does not get relief with conservative management of the compression of the median nerve at the wrist it would require surgical decompression.
On June 1, 1984, plaintiff returned to see Dr. Fambrough for the last time. Referring to plaintiff's "peripheral nerve compression at the wrist", Dr. Fambrough noted,
Mr. Bridges is not doing any better. He still has referred pain at the arm with numbness in the fingers. In light of this, I've suggested to him he consider surgical decompression of the nerve. He is going to be consulting with his attorney about whether or not financial arrangements can be made for it to be done here or if he will have to seek services through the Charity Hospital system. I will be awaiting to hear from him in the future.
In Dr. Fambrough's two summary letters he expressed the opinion that plaintiff's carpal tunnel syndrome was not related to or secondary to the auto accident.
On May 17, 1984, plaintiff saw Dr. Phillips, an orthopedic surgeon. Dr. Phillips received a history from plaintiff, conducted a physical exam, and took X-rays. Dr. Phillips did not testify. As with Drs. Fambrough and Adams, Dr. Phillips' letters and reports were entered into evidence by stipulation. After this first visit, Dr. Phillips concluded that plaintiff had "a severe cervical strain and nerve injury to his neck and may well have a fracture. He has been treated altogether appropriately. The prognosis is guarded." Dr. Phillips went on to state,
He also has a lumbar injury and some objective findings that suggest lumbar disc disease. We will have to follow him *1264 for both. As long as he is resting because of his neck, his back is not going to bother him very much. When he goes back to activities, if and when we get the neck fixed, the back may give us trouble.
Finally, Dr. Phillips concluded, "He is disabled as of now."
After reviewing plaintiff's previous medical records Dr. Phillips reported on June 26, 1984, his recommendation that plaintiff undergo a carpal tunnel release. After the release Dr. Phillips would reevaluate plaintiff's neck. Dr. Phillips classified plaintiff as of that date as "totally disabled from working."
The last report of Dr. Phillips contained in the record is dated November 26, 1984. In that report Dr. Phillips expressed his desire to take care of plaintiff, but stated there was apparently some financial difficulty. Dr. Phillips estimated the cost of his recommended care program for plaintiff at ten thousand dollars. Dr. Phillips concluded by stating,
All in all we are talking about a lot of money and a significant disability. On the other hand he is totally disabled now. If he doesn't get the proper treatment he will never get well.
At the trial only plaintiff testified. Plaintiff testified that immediately following the accident his head became swollen, and he experienced pain in the back of his neck, right arm and right shoulder. Specifically as to his right arm, plaintiff testified that from the time of the accident through the date of trial his arm "constantly aches and I lose control. This whole right fingers are dead most of the time, and I lose control of my hand. I drop things, and, you know, if I'm holding something, I drops it before I know I'm going to drop it." Plaintiff testified that at the time of the accident (which caused the truck to flip over causing considerable damage to both vehicles) his right hand was on the steering wheel of the truck.
As to the incident involving the two-by-four, plaintiff testified that it occurred two days after Dr. Fambrough told him to try and return to his normal activities. Our review of the record indicates that this would have been around April 12, 1984. Plaintiff described the incident as follows:
I had a young man doing work around my trailer, and he had a piece of 2 x 4, eight or ten foot long, and he asked me to bring one to him. I dragged one along, and I started getting dizzy. I sit down on the step, and he brought me inside, and I laid down a while.
When asked whether he had been able to do any work since the automobile accident plaintiff responded, "No, I can't use my right hand. Who going to hire me?" When asked to describe the pain in his neck plaintiff testified,
It aches from where the bone is broken and a sharp pain that goes down my back, and it must have something to do with my hand because every time it do that, my fingers and that aches like a toothache, and it gets numb. I didn't have that problem before I had the wreck.
The trial judge gave the following reasons for judgment:
Plaintiff's in court description of his complaints are completely inconsistent with Dr. Phillips' dramatic description of his complaints. His initial neck complaints were due to the cervical spinous process fracture. He almost neglected to mention a neck complaint in court and then said it produced pain that goes down his back, notably not his arms. There was no complaint whatever of trauma to the right wrist before the April 2 × 4 incident. The carpal tunnel syndrome was not caused by this accident.
He did have post concussion headaches in May of 1984, but these do not appear to be disabling.
Plaintiff has failed to demonstrate any disability past April 11, 1984 when he was last paid, and his suit will be dismissed.
These conclusions are unsupported by the record and are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
*1265 The record indicates that plaintiff remained disabled after April 11, 1984. Dr. Fambrough had instructed plaintiff to try to return to his normal activities, and to return for a follow-up evaluation. Plaintiff discovered that picking up a single two-by-four caused serious problems. In addition to the undisputed disability resulting from the carpal tunnel syndrome plaintiff continued to experience pain in his neck and back, and to suffer from headaches and dizziness.
As to the carpal tunnel syndrome, Dr. Fambrough's conclusion as to medical causation does not preclude compensation. There is a distinction between the "medical" meaning of cause and the "legal" meaning of cause. See Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982), citing Small, Gafing at at Thing Called Cause: Medico-Legal Conflicts in the Concept of Causation. 31 Tex.L.Rev. 630 (1953); See also Recent Cases, Hammond v. Fidelity & Casualty Co.: Liability Without Cause, 29 Loy.L. Rev. 235 (1983).
"Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton v. Fireman's Fund American Insurance Companies, 355 So.2d 927, 928 (La.1978). "It is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor...." Parks v. Insurance Company of North America, 340 So.2d 276, 281 (La.1976). "Post-accident complications, whether of purely a medical nature, or whether relating to subsequent off-the-job accidental injury, may be compensable if they are causally related to an on-the-job accident." Carter v. Rockwood Insurance Company, 341 So.2d 595, 598 (La.1977), citing Malone, Louisiana Workmen's Compensation Law and Practice, Sec. 233. "A recurrence or aggravation of an injury initially sustained at work is regarded as compensable and as resulting from the initial work-accident, even though the recurrence `develops' away from the premises and while the claimant is no longer employed by the master." Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419, 421 (La.1978), citing Owens v. Liberty Mutual Insurance Company, 307 So.2d 313 (La.1975).
When there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. Allor v. Belden Corp., 393 So.2d 1233 (La.1981). The criterion for causal connection between the accident and the disability is: "has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?" Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 at 827 (1969).
The presumption referred to above is rebuttable. Its effect is to shift the burden of proof to the defendant. The defendant bears the burden of coming forward with enough evidence to rebut the presumption. Walton v. Normandy Village Homes Association, Inc. et al, 475 So.2d 320 (La.Sup.Ct.1985); Allor v. Beldon Corp., supra, Haughton v. Fireman's Fund American Insurance Companies, supra.
The ultimate determination concerning disability under the worker's compensation statute is by the courts, not the medical experts. The courts apply legislative definitions to the medical science in order to achieve an equitable and just result. Bertrand v. Coal Operators Casualty Company, supra. See also Guillory v. United States Fidelity and Guaranty Insurance Company, 420 So.2d 119 (La. 1982).
Undisputed in this case is that plaintiff was injured in a work related accident resulting in subsequent disability until April 11, 1984. The evidence in the record demonstrates that plaintiff continued to suffer after April 11, 1984, from the injuries *1266 received in the work related accident. When he attempted to return to his normal activities, upon doctor's advice, his injuries were aggravated. He continued to suffer from the disabling affects of his injuries through the date of trial. Defendants failed to produce evidence to rebut the presumption that the accident caused the disability. See Walton v. Normandy Village Homes Association, Inc., et al, supra and Urbina v. Alois J. Binder Bakery, Inc., 423 So.2d 765 (La.App. 4th Cir.1982).
Accordingly, we find that at the time of trial plaintiff remained disabled, and is entitled to compensation because his disability was caused, at least in part, by the work related accident.
From a careful review and examination of the entire record we find plaintiff temporarily totally disabled. Under La. R.S. 23:1221(1) he is entitled to receive sixty-six and two-thirds percent of wages during the period of his disability. At trial the parties stipulated that the compensation rate is $123.97 per week based on an average weekly wage of $185.95. Additionally, under La.R.S. 23:1203 the plaintiff's employer is liable for all necessary medical, surgical and hospital services, and medicines.
We find, further, that the penalties and attorney's fees provided in La.R.S. 23:1201.2 and as prayed for by plaintiff are not warranted in this case. Defendants paid the benefits owed for compensation until April 11, 1984, plus the penalties and attorney's fees recommended by the Louisiana State Office of Worker's Compensation Administration. Thereafter, the circumstances of this case exhibit a genuine dispute between the parties concerning the compensability of plaintiff's claim. Defendants' failure to pay benefits subsequent to April 11, 1984, was not arbitrary, capricious or without probable cause. See Walton v. Normandy Village Homes Association, Inc., et al, supra and Urbina v. Alois J. Binder Bakery, Inc., supra.
For the reasons assigned the judgment of the trial court is reversed and judgment is rendered in favor of the plaintiff, Cleo Bridges, and against defendants Hood Motor Company, Inc., and its insurer, L.A. D.A. Self Insurers Fund, for weekly compensation benefits for temporary total disability at the rate of one hundred twenty three and 97/100 ($123.97) dollars for the period of his disability, and for all necessary medical, surgical and hospital services, and medicines. Costs are assessed against defendants.
REVERSED AND RENDERED.