MARVIN, Chief Judge.
The State Fire and Police Civil Service Examiner and Shreveport police officers, *713 who took the promotional test given and scored by the Examiner for the vacant position of Assistant Police Chief, appeal a district court judgment that affirmed the Shreveport Fire and Police Civil Service Board’s refusal to “certify” the test scores and allow the vacancy to be temporarily filled and the Board’s determination that the test was not “fair and reasonable.” LRS 33:2471 et seq.
The officers-examinees and the state examiner, who intervened in the trial court, unsuccessfully sought, in the action for a declaratory judgment and for injunctive relief, to introduce evidence to establish that the State Examiner’s test was “fair and reasonable” and that the Board’s determination was not made in good faith for cause and was arbitrary and capricious. LRS 33:2501.
The trial court considered that the action of the examinees and the Examiner was simply an appeal of the Board's determination as authorized by LRS 33:2501(E).
We consider the law establishing the relationship and the respective duties of the Board and the State Examiner and providing for judicial review of determinations by the Board. This law, originally a part of the 1921 constitution, is now contained in LRS 33:2471 et seq.
We affirm the judgment that the Board’s determination was made in good faith and for cause. § 2501(E)(3).
FACTS AND PROCEDURAL POSTURE
On February 18,1988, the Board voted to formally revise classifications of higher ranking Shreveport police officers, including the positions of assistant chief, on the recommendation of the police chief. The State Examiner was informed of the revision and of the concern that writing skills and communication ability of those eligible to take the test for promotion to assistant chief could not be determined by a test of the type usually given. The Board suggested a more comprehensive test that would determine whether an examinee possessed the desired skills and ability. On March 1, 1988, the Chief consulted with the State Examiner about these concerns. The Examiner postponed the test, rescheduling it for July 27. The Board’s and the Examiner’s correspondence in early 1988 promised cooperation to the other.
Later in March, the Examiner prepared and sent questionnaires to the Board which were completed on July 13 by the incumbent assistant chiefs. The information submitted on the completed questionnaires is routinely used by the Examiner to design the test to be given.
In a letter transmitting the completed questionnaires, the Shreveport mayor and police chief requested the Examiner to provide comprehensive written testing and oral interviews and an assessment center for the test scheduled on July 27, offering to pay any additional costs of a more comprehensive test.
The Examiner replied that time would not allow him to accommodate the desires of the mayor and chief and further explained that he was considering more comprehensive testing but could not institute such a program because his personnel and fiscal resources were strained. The Examiner suggested that the six-month to one-year working test period mandated by statute would allow the City an opportunity to more comprehensively test and assess the examinee who was to be temporarily appointed.
On July 26, 1988, the City of Shreveport sued to enjoin the Examiner from giving the exam, believing that the test would not fairly and reasonably determine whether the examinees possessed the desired skills and ability. This action was dismissed on the Examiner’s insistence that the Board had the statutory authority to determine, after the test was given and scored, whether the test fairly and reasonably tested for the desired skills and ability. LRS 33:2492(G). The test was given as scheduled on July 27, scored by the Examiner and the results submitted to the Board.
The Board then held a hearing in August, going into executive session with the Examiner to protect the security and integrity of the test. Each of the 148 questions on the exam were reviewed and discussed *714 in the executive session. The Board thereafter in open session determined that the questions prepared by the Examiner were too simple and did not fairly and reasonably test the desired skills and ability. On August 20, 1988, the Board voted to refuse to certify the test scores and to request the Examiner to prepare and administer a new test. The Board’s formal request for a more comprehensive test of desired skills and ability for examinees was denied by the Examiner, who by that time had intervened in the action instituted by the examinees in the trial court.
The trial court reviewed the exam questions, which were introduced under seal. The sealed exam is not contained in the record lodged here.
The trial court determined that the Board’s decision to refuse certification and to request a new test on the basis that the exam was not fair nor reasonable was made in good faith for cause and affirmed the Board’s action. The court stated that merely because the law provides for a working test does not mean that the Examiner should not fully test the applicants’ capacity and fitness to discharge the duties characteristic of positions to which they seek to be appointed.
In written reasons for judgment, the trial court stated, that upon the request of a jurisdiction willing to pay the extra cost of additional testing for ability and fitness to succeed in a job as important as Assistant Chief, the State Examiner should not refuse to include such testing in the exam he prepares without substantial justification. The court found the State Examiner’s refusal of Shreveport’s request was not justified. One of the assignments of error complains about this statement in the trial court’s reasons.
Appellants contend the trial court exceeded its statutory reviewing authority. We agree that LRS 33:2501(E)(3) limits the review of the Board’s decision to the determination of whether it was made in good faith for cause and provides that no appeal to the court shall be taken except upon these grounds.
The judgment and reasons for judgment are separate and distinct. The appeal is from the judgment, and not from reasons for judgment. CCP Art. 1918 and 2083; White v. McCoy, 552 So.2d 649 (La.App. 2d Cir.1989). See also Succession of Velasquez-Bain, 471 So.2d 731 (La.App. 4th Cir.1985), writ denied. Ford, Bacon & Davis Construction Co. v. Doga, 365 So.2d 1143 (La.App. 3d Cir.1978). We need only to determine whether the Board’s determination which is complained of was made in good faith for cause as the judgment of the district court states. We are not required to approve or disapprove of the trial court’s reason that is complained of.
OTHER CONTENTIONS
Appellants assert that the trial court should have allowed them to introduce evidence in their action for a Declaratory Judgment and injunctive relief, arguing that they were denied the right to cross-examine the local appointing authority.
LRS 33:2501(E) grants any employee under classified service the right to appeal any decision or action of the Board that is prejudicial to the employee. As we have noted, the appeal is limited to the determination of whether the Board’s decision was made in good faith for cause. No appeal to the court is allowed of the Board’s action except on the grounds stated in § 2501(E).
Judicial review authorized by § 2501 does not contemplate a trial de novo. Linton v. Bossier City Municipal Fire and Police Civil Service Board, 428 So.2d 515 (La.App. 2d Cir.1983). The trial court sits as a reviewing court in this instance and is to look only at the record and the evidence presented to the Board to determine whether the Board’s decision was made in good faith for cause. Sampite v. Natchitoches Fire and Police Civil Service Board, 426 So.2d 729 (La.App. 3d Cir.1983). We find no error in the trial court’s rulings to deny the introduction of evidence and to treat the action for a declaratory judgment as an appeal of the Board's determination under § 2501.
The remaining issue is the correctness of the trial court’s judgment that the *715 Board’s refusal to certify the test scores was in good faith for cause.
The civil service exam of which the City complained to the Examiner is a promotional test, as distinguished from a competitive test and a working test. The promotional test under § 2492(B) contemplates
... those matters which will fairly test the relative capacity and fitness of the candidates to discharge the duties characteristic of positions of the class to which they seek to be appointed. Tests may include written or oral questions, trials in the performance of work characteristic of the class, inquiries into facts relating to education, experience, or accomplishments in specialized lines of en-' deavor, or any combination of these and other elements duly related to the purposes of the tests. Emphasis supplied.
LRS 33:2492 obligates the local Board to provide, through the State Examiner, for tests to determine the eligibility of applicants. The responsibility for preparing, administering and scoring the test, however, is placed exclusively on the State Examiner, who also has the duty of submitting the test scores to the Board. LRS 33:2479(G) and 2492(F).
When the Board certifies the scores of the promotional test, the appointing authority is required to temporarily appoint to the position the seniormost examinee who passed the test. The promotional test is not a competitive test whereby the exami-nee with the highest score is appointed. A “working” test of the temporary appointee is then required by § 2495. The temporarily appointed applicant must complete the working test, or probationary performance, period to the satisfaction of the appointing authority before he or she becomes “permanent” in the position.
The working test period is at least six months and no more than one year. After three months and before six months in the working test, the temporary appointee may be removed from the position with prior approval of the Board on the grounds that (1) he is unable or unwilling to perform satisfactorily the duties of the position to which he has been appointed or (2) his habits and dependability do not merit his continuing in that position. The employee who has been three to six months into the working test may appear before the Board and present his case when board approval for removal is sought. If the employee is removed from the temporary position after serving six months in the working test, the employee may appeal the removal to the Board only upon the grounds that he was not given a fair opportunity to prove his ability in the position. § 2495.
Rather than immediately certifying the exam results, within six months of receiving the test results from the Examiner, the Board, under the express authority of LRS 33:2492(G), may
... receive and review any or all parts of the test and the methods used in its grading, in order to determine whether the test was a fair and reasonable one ... If the Board finds that a fair rating can be determined only from an entire new test, it may cause a new test to be given to all persons taking the previous test and, establish a new employment list for the class from the result of such new test. Our emphasis.
The Shreveport Board determined that the exam was not fair and reasonable because the questions posed were too simple and did not test the fitness of the examinees to perform all duties of the position, such as communicating with the City Council members, the press, and speaking at public gatherings.
At the August 18, 1988, hearing, the exam was reviewed question-by-question after the hearing was closed. Although the exam tested an examinee’s knowledge of criminal law and procedure, it did not test other skills and requirements of the Assistant Chief position. The exam did not cover communication ability, writing ability nor policy determination when the Assistant Chief’s duties include communicating to the public, writing reports, and stating policy, according to the record made before the Board.
Appellants argue that these areas can be adequately measured in the working test period and need not be included in the *716 written promotional test. LRS 33:2492 contemplates that the State Examiner, as the preparer, will prepare an exam that fairly tests the relative capacity and fitness of the applicants to discharge the duties of the position. It is apparent that the legislature intended that the capacity and fitness to discharge all duties of the position be tested. We recognize that the Examiner can only prepare questions relating to those duties of which he has been informed by the local authorities and that the duties of any position may vary from municipality to municipality. Nonetheless, LRS 33:2471 et seq. clearly contemplate mutual advice and cooperation between the Examiner and the local authorities in devising the particular test. The Board has the prerogative to determine, after the fact, if the test is fair and reasonable for its intended purpose.
We agree with the trial court’s stated finding that merely because a working test is statutorily mandated after the promotional test, the conclusion does not follow that the promotional test should not fully examine the capacity and fitness of an examinee to discharge all or most of the responsibilities of the position being tested for. LRS 33:2492 clearly contemplates that the test will be relatively commensurate with the responsibilities of the position being tested for.
CONCLUSION
The record does not indicate bad faith on the part of the Board in reaching its decision. LRS 33:2501(E)(3). LRS 33:2492(G) authorizes the Board to review the exam and to determine whether the exam was fair and reasonable for the purposes for which it was administered and whether the exam was fairly and correctly graded.
The Board’s decision that the test was not fair nor reasonable will not be disturbed on appeal unless the record establishes that the Board acted arbitrarily or capriciously so as to abuse its discretion. Linton v. Bossier City Municipal Fire and Police Civil Service Board, supra. This record indicates that the Board, in the closed hearing, reviewed and discussed, in the presence of the Examiner, every question on the exam. We do not know what the Examiner may have stated in the closed hearing, but note that the Examiner did not attempt to show at the open hearing, as he apparently was prepared to show in the trial court, that the questions reasonably and fairly tested for the skills and abilities desired by the local authorities.
DECREE
Under these circumstances we cannot conclude that the trial court erred in its judgment that the Board’s determination was made in good faith for cause and was not arbitrary or capricious.
AFFIRMED.