GOTHARD, Judge.
Defendants, St. Charles Hospital and Hospital Services of Loúisiana, Inc., appeal a trial court judgment in favor of plaintiff, Billie J. Fowler, ordering defendants to reinstate temporary total disability payments and to pay plaintiff past-due disability payments. For the following reasons, we affirm.
FACTS
On March 20, 1987, while employed as a licensed practical nurse (LPN) for St. i Charles Hospital, plaintiff, Billie J. Fowler, was kicked in the face by a patient, who was restrained on a bed, but whose legs were free. Mrs. Fowler suffered facial contusions, a laceration, and head and neck pain. She *294 immediately sought medical treatment. Mrs. Fowler began receiving workers’ compensation benefits (temporary total disability payments) in the amount of $238.15 per week on October 18, 1987. On March 6, 1990, her disability payments were terminated. Mrs. Fowler subsequently filed suit in the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana, seeking, inter alia, to have her disability payments reinstated. A trial on the merits was held on February 21, 1992. In lieu of live testimony, the depositions of three of Mrs. Fowler’s physicians were submitted thereafter, and on March 15, 1993, the trial court rendered judgment, ordering defendants to reinstate temporary total disability payments and pay past due payments from the date of termination. Defendants now appeal, arguing that Mrs. Fowler is not entitled to temporary total disability payments from the date of termination through the date of her second surgery because she was capable of working in a sedentary position.[1]
After the accident, Mrs. Fowler saw a doctor in the St. Charles Hospital emergency room. She was referred to Dr. Carlos Gor-bitz, a neurosurgeon, who treated her conservatively with traction, a cervical collar, and pain medications. Mrs. Fowler did not respond well to the conservative treatment, and in September of 1987, she began seeing Dr. Ralph Gessner, an orthopedic surgeon. Mrs. Fowler complained of neck pain, shoulder pain and numbness in both hands. Dr. Gess-ner ordered an MRI, which showed signs of disk protrusion at C6-C7. Dr. Gessner then referred Mrs. Fowler to Dr. Thomas White-cloud, a board certified orthopedic surgeon in New Orleans. Dr. Whitecloud performed an anterior cervical disk excision and fusion on Mrs. Fowler on November 4, 1987. Although the surgical procedure went well, Mrs. Fowler has experienced continuing problems. The fusion did not hold and the bone graft placed in the cervical disk space collapsed. Mrs. Fowler has had continual pain in her neck and shoulders and numbness in her hands since the surgery.[2]
Mrs. Fowler testified at trial that she worked for St. Charles Hospital as an LPN for fifteen years. She testified that since the accident she has suffered with constant neck pain, headaches, stiffness and numbness in her arms and hands. She also testified that she has trouble grasping and holding on to things and cannot sit or stand in one position for too long without experiencing pain.
Mrs. Fowler’s husband of 38 years also took the stand and testified that Mrs. Fowler has problems opening bottles and jars and cannot perform any household duties that require any heavy lifting or pushing. He also testified that Mrs. Fowler frequently has trouble sleeping and that they cannot travel much because of her discomfort.
As stipulated by the parties, three of Mrs. Fowler’s physicians, Drs. Whitecloud, Gess-ner, and Benson, all testified via deposition. Dr. Benson is board certified in physical medicine and rehabilitation. Mrs. Fowler was referred to Dr. Benson by Dr. Gessner to perform tests to determine what was causing Mrs. Fowler’s pain and numbness. Dr. Benson testified that an EMG and nerve conduction studies performed were abnormal. Dr. Benson found nerve root irritation from the neck and attributed Mrs. Fowler’s neck injuries and resulting pain and numbness in her arms and hands to the accident.
Dr. Gessner also testified that Mrs. Fowler’s neck injuries and resulting pain and numbness were caused by the accident of March 20, 1987. Dr. Gessner began seeing Mrs. Fowler on September 28, 1987, after conservative treatment failed to reduce her symptoms. These symptoms, neck pain radiating into her shoulders and numbness in her hands, have been present throughout Mrs. Fowler’s treatment. Dr. Gessner ordered an MRI of her cervical spine which showed an area of' central disk protrusion at C6-C7. Dr. Gessner also ordered the EMG/nerve conduction study performed by Dr. Benson *295 and then referred Mrs. Fowler to Dr. White-cloud in New Orleans. Dr. Gessner continued to follow Mrs. Fowler, ordering postoperative X-rays and an MRI, prescribing pain medications, and giving her a TENS unit to try to reduce her pain. Mrs. Fowler’s symptoms continued, however, and by September of 1988, Dr. Gessner had concurred with Dr. Whitecloud’s recommendation that Mrs. Fowler seek medical retirement (i.e., Mrs. Fowler’s condition could not be improved enough so that she could resume her duties as an LPN). Dr. Gessner also testified that he did not feel Mrs. Fowler was capable of returning to any type of employment during the time that he was treating her.
Dr. Whitecloud, Mrs. Fowler’s primary treating physician, also testified via deposition. He first- saw Mrs. Fowler on October 28, 1987. After a physical examination and reviews of her MRI, CT scan and X-rays, Dr. Whitecloud felt Mrs. Fowler was a candidate for an anterior cervical disk excision and fusion. On November 4, 1987, Dr. White-cloud performed the surgery, wherein he removed the disks at C5-C6 and C6-C7 and fused in bone from Mrs. Fowler’s right iliac crest (upper portion of the hipbone). Dr. Whitecloud testified that Mrs. Fowler has had continuing problems since this surgery. By January of 1988, there was evidence of a graft collapse in the area where the bone was fused; although, over time, the fusion occurred at the C5-C6 level. On January 7, 1988, Dr. Whitecloud felt Mrs. Fowler had reached maximum medical improvement, assigned a fifteen percent permanent impairment rating of her body and released her to work in a sedentary position (i.e., a job where she wouldn’t have to sit or stand for prolonged periods or do any lifting or work with her hands over her head). Because of Mrs. Fowler’s persistent post-operative symptoms, Dr. Whitecloud ordered a discogram. A previous discogram, performed prior to her surgery, showed only the C5-C6 and C6-C7 disks as abnormal. However, the post-surgery discogram showed the C3-C4 disk as abnormal and Dr. Whitecloud suspected the C4-C5 disk was abnormal as well. By July of 1989, Dr. Whitecloud recommended a second anterior cervical disk excision and fusion. However, defendants refused to approve any further surgery for Mrs. Fowler.[3] Mrs. Fowler’s temporary total disability benefits were terminated on March 6, 1990.
At the time of his deposition, October 20, 1992, Dr. Whitecloud maintained that a second surgery was necessary to improve Mrs. Fowler’s condition. Dr. Whitecloud testified that the examinations and tests performed on Mrs. Fowler throughout her treatment resulted in objective findings of injury which were causing her continued pain. Although he had released her to work in a sedentary position in 1988, and knew she had not worked since the first surgery, Dr. White-cloud felt that Mrs. Fowler was not malingering in any way.
ANALYSIS
Defendants’ first assignment of error is: “The district court committed reversible error in awarding the plaintiff weekly workers’ compensation benefits in the amount of temporary total disability of $238.15 per week from March 9, 1990 despite finding in its Reasons for Judgment that the plaintiff was capable of working in a sedentary position.” In the trial court’s reasons for judgment, the deposition of Dr. Whitecloud was adopted and includes the position that Mrs. Fowler was capable of working in a sedentary position. In the trial court’s judgment, Mrs. Fowler was granted temporary total disability benefits for the entire period since her benefits were terminated. Defendants argue that this constitutes an inconsistent trial court judgment. As aptly stated in Dufour v. Horton, 609 So.2d 1109, 1113 (La.App. 2nd Cir.1992),
[t]his assignment is based upon the trial court’s reasons for judgment rather than the judgment itself. Appellate review, however, lies only from the court’s judgment, not the reasons therefor. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir.1987), and cases cited therein. See also La.C.C.P. art. 1918. Regardless of what may have been a trial court’s *296 reasons for rendering judgment, if the judgment is correct it should be affirmed. Caldwell v. Second Judicial Dist. IDB, 475 So.2d 96 (La.App. 2d Cir.), writ denied 477 So.2d 1126 (1985). Thus, plaintiffs’ [first] assignment of error is not properly before us insofar as it does not raise an error in the lower court’s judgment. See Hardin, supra; Kennedy v. Lafleur’s Fried Chicken, 571 So.2d 216 (La.App. 3d Cir.1990).[4]
Defendants’ second, and final, assignment of error is: “The district court committed reversible error by awarding any weekly workers’ compensation benefits to the plaintiff as she failed to carry her burden of proof that she was unable to perform employment available to her.” Defendants assert that not only is Mrs. Fowler not entitled to temporary total disability benefits, she is also not entitled to supplemental earnings benefits pursuant to LSA-R.S. 12:1221(3) because she failed to prove that she was unable to engage in any gainful occupation after Dr. White-cloud released her to work in a sedentary position.
In Babineaux v. Brown & Root, Inc., 543 So.2d 946, 948 (La.App. 5th Cir.1989), writ not considered, 548 So.2d 1221 (La.1989), reconsideration denied, 551 So.2d 625 (La.1989), we stated:
In order to recover temporary total disability, an injured employee must prove by a preponderance of the evidence that he is unable to engage in any self-employment or' gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training or experience. LSA-R.S. 23:1221(1); Green v. Cement Products Services, Inc., 526 So.2d 493 (La.App. 1 Cir.1988).
Mrs. Fowler testified at the February 21, 1992 trial that since her surgery, she continually drops things and has trouble grasping and holding onto things because of the numbness in her hands. She also suffers from severe headaches and continual neck, shoulder and arm pain. She cannot sit or stand for any length of time. All of this testimony was corroborated by her doctors and her husband. On cross-examination, Mrs. Fowler denied ever knowing that Dr. Whitecloud had released her to work in a sedentary position and denied ever being able to work in a sedentary-type job since her surgery. She also testified that she had received a note from a doctor in Dr. Whitecloud’s office (a copy of which was introduced into evidence) who examined her in Dr. Whitecloud’s absence in February of 1990. The note stated that Mrs. Fowler was not able to work at that time. In his deposition, Dr. Whitecloud confirmed that the note was written by someone in his office. He later testified that he did not feel Mrs. Fowler was malingering in any way. Additionally, Dr. Gessner (the orthopedic surgeon who referred Mrs. Fowler to Dr. Whitecloud and continued to follow her after the surgery) testified in his deposition that he did not think Mrs. Fowler was capable of returning to work in any type of capacity.
The ultimate determination concerning disability under the workers’ compensation statute is by the courts, not the medical experts. Bridges v. Hood Motor Co., Inc., 477 So.2d 1261, 1265 (La.App. 4th Cir.1985), writ denied, 481 So.2d 1335 (La.1986). It is clear that in finding that Mrs. Fowler was unable to engage in any gainful occupation, and therefore, that she was entitled to temporary total disability benefits, the trial court relied more on the testimony and evidence as a whole, than on the belief by Dr. Whitecloud that Mrs. Fowler was capable of sedentary work. It is well settled that a court of appeal may not set aside a trial court’s finding of fact absent manifest error. Rosell v. Esco, 549 So.2d 840 (La.1989). As stated by the Louisiana Supreme Court in Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993),
*297 ... the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate eouil; may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
After reviewing the record in its entirety, we cannot say that the trial court was manifestly erroneous in ordering defendants to reinstate temporary total disability payments and pay past due payments from the date of termination. For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are east against defendant/appellant.

AFFIRMED.

. Defendants also argue that Mrs. Fowler is not entitled to any supplemental earnings benefits pursuant to LSA-R.S. 23:1221(3).

. Subsequent to the trial court’s judgment, Mrs. Fowler underwent a second anterior cervical fusion. Defendants admit that Ms. Fowler is entitled to temporary total disability payments after the second surgery.

. Pursuant to the trial court’s judgment of March 15, 1993, Mrs. Fowler has subsequently undergone the recommended second anterior cervical disk excision and fusion.

. See also Lutz v. Jefferson Parish School Board, 503 So.2d 106, 109 (La.App. 5th Cir.1987); Cornelius v. Housing Authority of New Orleans, 539 So.2d 1250, 1252 (La.App. 4th Cir.1989), writ denied, 544 So.2d 404 (La.1989); City of Kaplan v. Mayard, 616 So.2d 826, 827 (La.App. 3rd Cir.1993); Walsworth v. Municipal Fire & Police Civil Service Board of the City of Shreveport, 567 So.2d 712, 714 (La.App. 2nd Cir.1990).