887 So.2d 731 (2004)
Greg BROWN, Plaintiff-Appellant,
v.
CITY OF BOSSIER CITY, et al., Defendants-Appellees.
No. 38,915-CA.
Court of Appeal of Louisiana, Second Circuit.
November 19, 2004.
Rehearing Denied December 9, 2004.
*733 Pamela Robin Jones, Ronald J. Miciotto, Shreveport, for Appellant.
Cook, Yancey, King & Galloway by Robert Kennedy, Jr., Kenneth Mascagni, Shreveport, for Appellee, City of Bossier City.
Michael G. Latimer, for Appellee, Municipal Fire & Police Civil Service Board.
Before GASKINS, CARAWAY, PEATROSS, MOORE and LOLLEY, JJ.
PEATROSS, J.
Officer Greg Brown ("Officer Brown") appeals the judgment of the trial court upholding the determination of the Bossier City Municipal Fire and Police Civil Service Board ("the Board") that Chief of Police Mike Halphen ("Chief Halphen") acted in good faith and for cause in terminating him. For the following reasons, we affirm.

FACTS
On May 19, 2001, several officers from the Bossier City Police Department, along with officers from other law enforcement agencies, were involved in a vehicle pursuit. It ended when the suspect vehicle and a patrol car driven by Sergeant John Jeter ("Sergeant Jeter") of the Bossier City Police Department both crashed into a ditch on Carrolton Street in Bossier City. Officer Brown arrived at the scene after the vehicles had wrecked. He exited his vehicle and ran around Sergeant Jeter's vehicle where he observed a white male face down on the ground being seized by at least two other officers.
*734 The events that then transpired were recorded by a video camera in a patrol unit from the Bossier Parish Sheriff's Office. The video shows a police officer apparently struggling to cuff the hands of a prone suspect behind his back. Two other officers, at various times, come to his aid. Officer Brown is then seen running to the suspect and leaning on him with his knee on the suspect's back. The video reveals Officer Brown rising and lowering several times. He then goes to check on Sergeant Jeter who was still in the damaged patrol car.
Afterwards, Officer Brown filled out and signed a supplemental incident report in which he described the pertinent portions of the incident as follows:
I exited my vehicle and ran to the scene to find two w/m's in handcuffs and Sergeant Jeter still in his vehicle. I opened the car door to check on him and he was asking me what happened and where was he at. I told him what had happened and he was still asking how it happened. I immediately called for BCFD for him. I stayed with Sgt. Jeter until he exited his vehicle under his own power. I was then asked to leave the scene and write a supplement [sic] report about the incident.
Officer Brown's report made no mention of any physical contact between him and any of the suspects, nor did he complete a "use of force" form, which is required whenever there is physical contact between an officer and a suspect.
On June 19, 2001, Officer Brown was interviewed about the incident by Sergeant Larry Stockton at the Bossier City Police Department Internal Affairs Office. In this interview, Officer Brown admitted that he had "put" his knee on the suspect's back between the shoulder blades and "held him there" before attending to Sergeant Jeter. The contact occurred when Officer Brown first came upon the suspect who had officers on top of him. He stated that he took this action because he did not know whether the suspect was handcuffed, but noticed that the suspect was still moving.
Approximately two weeks later, Officer Brown was questioned by the Administrative Review Board of the Bossier City Police Department.[1] Officer Brown admitted that he "put" his knee on the suspect at least "a couple of times." He reiterated his assertion that, when he first came on the scene, he could not tell whether the suspect was handcuffed; however, once he realized he was, he "got up off of him" and went to assist Sergeant Jeter. He further admitted that he had omitted the use of force from his report and that he failed to complete the required "use of force" form. During the course of both interviews in which Officer Brown's story varied from what he recited in his initial report, he admitted that he had already seen the videotape of the incident.
In a letter dated July 18, 2001, Chief Halphen terminated Officer Brown from his employment as a Bossier City police officer. The letter cites as the reasons for the discharge the use of unnecessary force against a suspect, failure to file a "use of force" form and failure to report the use of force to his supervisor, all in violation of the Bossier City Police Department Code of Conduct and General Order 00-09.
The pertinent provisions allegedly violated by Officer Brown read as follows:
Bossier City Police Department Code of Conduct

*735 SECTION 6  DERELICTION OF DUTY
....
PARAGRAPHB  Failure to observe and give effect to the policies of the Department.
....
PARAGRAPHD  Failure to make a proper report of offenses investigated, observed, or reported.[2]
....
PARAGRAPHR  For unnecessary violence toward any person.
SECTION 19  DUTIES REGARDING THE PROTECTION OF PRISONERS, THEIR RIGHTS AND THEIR PROPERTIES
....
PARAGRAPHB  No employee shall use any verbal or unnecessary violence against any person in custody.
....
PARAGRAPHF  Each officer shall use only such force as is necessary in effecting an arrest.
General Order 00-09, Issued January 17, 2000
II. Policy  it shall be the policy of the Bossier City Police Department that officers shall not use unnecessary physical or deadly force in any circumstances.
V. Reporting Use of Force
A. Any time an officer, either on-duty or off-duty, uses physical force, he shall prepare the applicable offense report and a Use of Force form. The purpose of the Use of Force form is to accomplish immediate documentation of the force used
....
B. Each officer who uses force on a subject shall contact his supervisor immediately.
Officer Brown appealed his termination, and a hearing was held by the Bossier City Municipal Fire and Police Civil Service Board on August 23, 2001.
At the hearing, the Board viewed the videotape of the incident and heard the testimony of Officer Brown, Chief Halphen, Deputy Chief Teutsch and Deputy Jimmy Chreene ("Deputy Chreene"). Officer Brown's version of the events at the hearing differed from his earlier versions in that he admitted that he pushed down on the suspect's back with his knee "three or four times." He testified that he did not include the use of force in his report or complete a "use of force" form because the force that he used "was necessary in effecting the arrest." Officer Brown elaborated on his earlier versions by indicating that he intervened because the other officers had been unable to get both of the suspect's hands behind his back. He also gave testimony suggesting that the suspect was not handcuffed at the time he came on the scene because his left arm was still under his body. It is unclear whether this version is a reflection of his independent recollection or his assessment of the contents of the videotape.
Chief Halphen testified that he was not the chief of police at the time of the incident, but took the post shortly thereafter when Chief Dison retired. After reviewing the videotape of the incident, Chief Halphen concluded that Officer Brown used unnecessary force on a suspect. Chief Halphen also testified that, when he compared the events depicted in the videotape to the report filed by Officer Brown, he concluded that Officer Brown violated department policy in filing an inaccurate *736 incident report and failing to file a "use of force" form. In explaining the impact that Officer Brown's conduct would have on the effective operation of the police department, Chief Halphen stated the following:
[T]he first document that he filed was an official police report which he failed to note the details of his actions in touching or further assisting the arrest of the suspect, omitting those details. Secondly, what I learned from viewing the videotapes is that the force he used was unnecessary to effect the arrest. That suspect was not struggling and, therefore, in good orderly fashion of the police department, which it is very well known that you will detail a report and not omit things at your discretion. And, secondly, abusing the unnecessary force to effect an arrest would not be conducive to the Bossier City Police Department.
He later elaborated on the subject with the following:
It creates numerous problems. One from the point that the facts written, an official police report, were not the actual facts that occurred on the scene, therefore giving him less credibility on a witness stand at any given time since the video has shown up. Also, it hurts me from a liability standpoint later on of whether or not he's telling the truth in a police report or on the witness stand, nor reflecting the correct events as they occurred.
Deputy Chief Teutsch also testified that, in viewing the videotape, he did not perceive that the suspect was resisting arrest or moving in a "violent manner" at the time Officer Brown came on the scene. At the conclusion of the hearing, the Board voted three to two to uphold the action of the appointing authority.
On September 21, 2001, Officer Brown filed a petition for judicial review in the 26th Judicial District Court. After reviewing the record of the Board proceedings and the parties' respective memoranda, the trial court rendered judgment affirming the decision of the Board and finding that its decision was not arbitrary or capricious, but was made in good faith and for cause. This appeal followed.

LAW AND DISCUSSION
The composition of the review Board is intended as a safeguard for fair review. It has the power to modify a discharge to a suspension or otherwise. La. R.S. 33:2501(C)(1). It must, however, measure the good faith of the chief of police and the city. Once the matter gets to the courts, La. R.S. 33:2501(E)(3), which used to be contained in the Constitution, states:
This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.
Quoting the above caption, the Supreme Court stated in Marchiafava v. Baton Rouge Fire and Police Civil Service Bd., 233 La. 17, 96 So.2d 26 (1957), "... unquestionably the district court was without authority to substitute, as it did, its judgment for that of the Board (changing the punishment meted out from dismissal to suspension)." In a later case, the Supreme Court took the "good faith" standard of the Constitution and statute and transformed it to an "arbitrary and capricious" standard. Newman v. Dept. of Fire, 425 So.2d 753 (La.1983)(citing the 4th Circuit but not the "good faith" standard of the Constitution before its amendment in 1983).
*737 The case sub judice is governed by the Municipal Fire and Police Civil Service Law. La. R.S. 33:2471, et seq. Specifically, under La. R.S. 33:2500(A), Chief Halphen, the appointing authority for the Bossier City Police Department, was allowed to discharge or otherwise discipline Officer Brown for any one of the following reasons:
(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
(2) The deliberate omission of any act that it was his duty to perform.
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
....
(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
La. R.S. 33:2500(B) provides, in pertinent part:
Unless the cause or condition justifies an employee being permanently removed from the service, disciplinary action may extend to suspension without pay for a period not exceeding the aggregate of ninety days in any period of twelve consecutive months, reduction in pay to the rate prevailing for the next lower class, reduction or demotion to a position of any lower class and to the rate of pay prevailing therefor, or such other less drastic action that may be appropriate under the circumstances.
If the civil servant wants to appeal the action of the appointing authority, he has the right to demand in writing within 15 days of the action a hearing and investigation by the civil service board to determine the reasonableness of the action. The board is then to allow the appointing authority and the civil servant a hearing in which they are to be afforded the right to be heard and allowed to present evidence to show that the action was or was not taken in good faith and for cause. La. R.S. 33:2501.
La. R.S. 33:2501 requires the Board, in reviewing the disciplinary actions taken by the appointing authority against civil servants, to reinstate or re-employ a civil servant if it is not established that the action was taken in good faith and for one of the causes delineated in La. R.S. 33:2500. If the evidence is conclusive, the civil service board may affirm the appointing authority's disciplinary action. La. R.S. 33:2501. Although the appointing authority has the burden of proof, it is not required to prove its case beyond a reasonable doubt, but merely by a preponderance. Pearson v. Municipal Fire and Police Civil Service Board for the City of Shreveport, 609 So.2d 1038 (La.App. 2d Cir.1992).
A board's findings of fact are entitled to the same weight as those made by a trial court and are not to be overturned absent manifest error. McGehee v. City/Parish of East Baton Rouge, 00-1058 (La.App. 1st Cir.9/12/01), 809 So.2d 258. Moreover, a civil service board's determination, if made in good faith and for legal cause, should not be disturbed by the judiciary on appeal. La. R.S. 33:2501(E)(3); Walsworth v. Municipal Fire & Police Civil Service Board of City of Shreveport, 567 So.2d 712 (La.App. 2d Cir.1990).
The discharge of a police officer does not occur "in good faith" if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or *738 political expediency. Pearson, supra, at 1041; Martin v. City of St. Martinville, 321 So.2d 532 (La.App. 3d Cir.1975), writ denied, 325 So.2d 273 (La.1976).
A trial court is not free to substitute its opinion as to appropriate disciplinary action when it is shown that officers violated a valid departmental regulation and that disciplinary action was necessary for the efficiency of the department and to avoid detriment to the public. The decision of the board will not be overturned on appeal, even as to the severity of the discipline, unless the record reveals an abuse of discretion or an insufficiency of supporting evidence. McDonald v. City of Shreveport, 26,877 (La.App.2d Cir.5/10/95), 655 So.2d 588.
Officer Brown asserts four assignments of error in his appeal: (1) that the evidence was insufficient to establish that he used unnecessary force; (2) that the Board erred in considering the testimony of Deputy Chreene regarding facts outside the scope of the factual allegations made in Officer Brown's letter of discharge; (3) that the evidence was insufficient to establish that his failure to report the use of force was intentional; and (4) that the evidence failed to show that the discharge was necessary for the orderly and efficient operation of the police department. We will address each assignment of error in turn.

Use of Unnecessary Force
Officer Brown was the only witness who was present during the knee incident to testify. The other witnesses testifying about this portion of the complaint had only viewed the video and then described their observations and their interpretations of Officer Brown's actions. Nothing in the record shows that Officer Brown erred in coming to the aid of an arresting officer. No evidence was presented that the suspect was injured by Officer Brown's actions during this arrest.
As a court of appeal, we are bound to the record before us and cannot set aside a trial court's finding of fact absent manifest error. Accordingly, we defer to the findings of the Supreme Court in Marchiafava, supra, that "unquestionably the district court was without authority to substitute, as it did, its judgment for that of the Board (changing the punishment meted out from dismissal to suspension)." It appears that reasonable minds could differ on what the videotape showed. While the punishment may be harsh, Officer Brown had to prove to the Board that it was meted out to him in bad faith, presumably because other officers routinely do these and other similar violations and were not discharged. This was not the case that was argued at the lower court, nor the case argued before us on appeal.
The Supreme Court in Marchiafava, supra, and Newman, supra, stated that we are "without authority" to change the punishment if clear conduct violations are present and the officer has been shown no bad faith by the chief of police and the Board in arriving at his punishment. Officer Brown simply argues that no violations (or only the non-reporting violation) occurred. We disagree. Based upon the Marchiafava and Newman language, supra, and the premise that reasonable minds could differ on what the videotape showed, we reject Officer Brown's argument on this point and affirm the trial court's ruling that the Board's finding was not arbitrary or capricious.

Admission of Testimony by Deputy Chreene
Evidence of another "use of force" incident during the suspect's arrest was described by Deputy Chreene, but it did not form the basis of the complaint in the case sub judice.
*739 Deputy Chreene testified that he also participated in the vehicle pursuit, but did not arrive at the scene of the arrest until both suspects had already been subdued and Officer Brown's initial contact with the suspect was over. He testified, however, that he witnessed Officer Brown twice stand and pivot on the back of one of the suspects. Deputy Chreene admitted that this alleged behavior is not depicted on the videotape of the incident. He was the only witness to testify regarding this "second" incident.
Under La. R.S. 33:2500, Officer Brown was entitled to receive "a statement in writing of the action and the complete reasons therefor."[3] The purpose of such notice is to fully advise the employee of the basis for the action taken against him, including specific facts upon which each charge is made. Dumez v. Houma Municipal Fire & Police Civil Service Board, 365 So.2d 603 (La.App. 1st Cir.1978).
Chief Halphen made no reference to Deputy Chreene's pivoting allegations in his dismissal letter to Officer Brown. The Board did not recite Deputy Chreene's testimony in its decision to affirm the action of Chief Halphen. To the contrary, the Board's decision recited only the "knee" incident regarding the alleged use of unnecessary force. Since the record indicates that Deputy Chreene's testimony was not included in the complaints made against Officer Brown, the admission of his testimony is harmless error.

Failure to Report Use of Force
Officer Brown argues that the city failed to prove that he intentionally failed to report his use of force. In support of this contention, Officer Brown cites his own testimony that he believed the reporting requirement to be intended for incidents involving more serious force, that he had been taught to use the force he used and that his omission of the use of force in his report was not intentional.
In order for the Board to affirm Officer Brown's discipline, the appointing authority had to prove the applicability of one of the reasons enumerated in La. R.S. 33:2500(A) by a preponderance of the evidence. In relation to Officer Brown's failure to report his use of force, the applicable reason would be La. R.S. 33:2500(A)(2), "[t]he deliberate omission of any act that it was his duty to perform."
Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Thompson v. Dillard's Department Store, 32,974 (La.App.2d Cir.5/10/00), 759 So.2d 1074. Further, General Order 00-09, Section V, Issued Jan. 17, 2000, states, in pertinent part:
V. Reporting Use of Force
A. Any time an officer, either on-duty or off-duty, uses physical force, he shall prepare the applicable offense report and a Use of Force form. The purpose of the Use of Force form is to accomplish immediate documentation of the force used....
B. Each officer who uses force on a subject shall contact his supervisor immediately.

*740 General Order 00-09, Section V (Emphasis added.)
Regardless of which version of this incident is the most accurate, the facts support that there was physical contact between Officer Brown and the suspect, and he did not fill out the proper documentation or follow the proper procedure, both of which were violative of stated office policy and Louisiana state law. The policy clearly requires that a report be prepared every time an officer uses physical force and that he report the use of force to his supervisor. Officer Brown explained his failure to prepare the "use of force" form as resulting from his gross misinterpretation of the department's policy regarding the use of such forms. Whether his explanation is believable and/or pardonable, it does not explain the total omission of his contact with the suspect from his incident report, nor the failure to contact his supervisor.
Officer Brown's incident report relates in great detail his involvement in the events of that evening with the exception that it makes no mention of his contact with the suspect or his assistance in effecting an arrest. Accordingly, we cannot conclude that the Board manifestly erred in finding that Officer Brown's failure to report the use of force was deliberate.

Failure to Show Action Necessary for Efficient Operation of the Department
Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operation of the public service. Newman, supra; Laborde v. Alexandria Municipal Fire & Police Civil Service Board, 566 So.2d 426 (La.App. 3d Cir.1990), writ denied, 568 So.2d 1055 (La.1990).
Chief Halphen testified that the operation of his department was impaired by Officer Brown's conduct in that his use of unnecessary force in effecting an arrest raised liability issues on the part of the department and his reporting failures called into question his credibility as a witness. The reporting policy on the use of force also gives us insight into the effect Officer Brown's conduct has on the department. The "use of force" form is to be:
used to identify training and equipment needs and to identify potential problem areas. Use of Force forms cannot be used against an officer in a performance evaluation nor can they be the basis for discipline when the force used was justified. General Order 00-09, Section V, Paragraph A
Obviously, an officer's deliberate failure to report the use of force impedes the department's ability to assess training needs and recognize potential problems with individual officers.
La. R.S. 33:2500(A) states, in pertinent part:
(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
(2) The deliberate omission of any act that it was his duty to perform.
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
....
(14) The wilful violation of any provision of this Part or of any rule, regulation, or order hereunder. (Emphasis added.)
*741 In the case sub judice, the actions of Officer Brown seem to fall under all four enumerated sections of La. R.S. 33:2500(A). By Officer Brown's admission, he omitted the requisite form from his report and failed to fill out this required document, in clear violation of stated policy, and, in turn, was in violation of sections (1), (2) and, possibly, (3) and (14). His use of physical force was, according to Chief Halphen, "unnecessary to effect the arrest" and his abusing the unnecessary force standard was "not ... conducive to the Bossier City Police Department." This meets the "commission ... of [an] act to the prejudice of the departmental service or contrary to the public interest or policy ..." as set out in section (3).
We find, therefore, that there was a real and substantial relation between the conduct of Officer Brown and the efficient operation of the Bossier City Police Department.

CONCLUSION
The findings of the Bossier City Municipal Fire and Police Civil Service Board are hereby affirmed. Costs of this appeal are assessed between the parties. Costs of this appeal are assessed against appellant, Greg Brown.
AFFIRMED.
GASKINS and LOLLEY, JJ., dissent with written reasons.
GASKINS, J., dissenting.
I respectfully dissent from the majority's opinion.
Officer Brown was the only witness who was present during the knee incident to testify. The other witnesses testifying about this portion of the complaint had only viewed the video and then described their observations and their interpretations of Officer Brown's actions. This court, likewise, screened the video. I observed another officer struggling to gain control over a suspect who was lying face down on the ground. One hand of the struggling suspect appeared to be cuffed, while the other was free and flailing. Two other officers ran over and put pressure on the suspect. As Officer Brown approached, he rushed over to the suspect and placed his knee on his back. Officer Brown's body is seen to rise and fall, but it is unclear whether this was caused by the bucking of the suspect or by Officer Brown's administration of pressure. As soon as both of the suspect's hands were cuffed, Officer Brown got up and went to check on the injured officer in the vehicle. Officer Brown's assertion of reasonable force is not inconsistent with the actions seen on the tape.
I am cognizant that the police must also be policed; however, they should not be subjected to overly harsh restraints that prevent them from performing their duties. Based on the lack of evidence regarding the excessive use of force by Officer Brown, I would find manifest error in the Board's determination.
I agree with the majority that the Board properly found that Officer Brown's failure to report the use of force was deliberate. However, I would find that termination of this officer is too harsh a remedy for this infraction, especially in light of the lack of previous complaints against Officer Brown. This matter should be remanded to the Board to fashion a more appropriate punishment.
LOLLEY, J., dissenting.
I respectfully dissent from the majority's opinion in this case.
This matter arises from an incident of May 19, 2001, in which appellant, Officer Greg Brown, along with other officers of *742 the Bossier City Police Department and officers from other law enforcement agencies, were involved in a pursuit and arrest of an individual.
As the result of the vehicle pursuit one officer of the Bossier City Police Department was injured in an automobile crash caused by the offender, who was subsequently arrested. Officer Brown was on the scene and as the result of actions taken to secure the person who caused the incident and injuries to the police officer he was terminated from his employment with the Bossier City Police Department. Officer Brown was a four-year veteran of the police department who had no prior disciplinary infractions as the result of the discharge of his duties.
As pointed out by the majority, there is a threshold which must be met for appellant to be successful in appealing the ruling(s) of the Bossier City Municipal Fire and Police Civil Service Board and the ultimate ruling of the Twenty-Sixth Judicial Court. I am of the opinion that the record of this matter sufficiently shows the issues of bad faith and arbitrary and capricious conduct on the part of both the appointing authority and the civil service board to merit reversing the rulings and remanding the matter back to the civil service board for further proceedings.
A video tape was made of the incident on the scene of the automobile crash and the actions taken by Officer Brown and several other officers on the scene as well. A viewing of this video tape clearly shows that the person who caused the accident and injuries to the police officer was actively and aggressively resisting arrest on the scene. One officer was attempting to handcuff the suspect and other officers were attempting to assist at various times. Officer Brown's involvement in this incident is clearly depicted on the video tape. The tape clearly shows Officer Brown come onto the scene and on two separate occasions place his knee onto the upper back portion of the suspect's torso. All the while the video clearly shows that the suspect was continuing to aggressively resist these attempts. The video tape clearly shows that the suspect was not under control at the time of Officer Brown's intervention and was only finally under control and handcuffed after his second intervention. At this time Officer Brown moved onto the scene of the wrecked patrol car and injured officer. At no time was it noticed that this officer was taking what might be termed a "gratuitous shot" at the suspect as has been implied in this matter and most certainly there is no showing of any type that he did a "pivot" on the back of the suspect as claimed by a deputy from another agency. (Contrary to the majority I am of the opinion that this claim was a significant factor in the decision to terminate the officer and it most certainly cannot be viewed as harmless error.)
Subsequent to this date the officer went back to regularly assigned duties with the Bossier City Police Department. Several weeks later a new, or interim, police chief was appointed to lead the police department and these proceedings began. It is not unknown for new chiefs, sheriffs, etc. to have an immediate desire to place their own stamp on an agency.
An investigation was started and various types of discipline were dispatched to the officers involved. I find nothing in this record which distinguished the reasons for the different levels of discipline. I am of the opinion that these processes give great reason to suspect various issues of bad faith and arbitrary and capricious conduct on the part of the appointing authority.
When first confronted the officer did give a conflicting statement. His position was that he did not think that a separate *743 use of force report was necessary when the incident involved attempts to arrest a person who was violently resisting arrest. When viewing the entire matter before this court, I do not feel this was an unreasonable reaction on the part of the officer. Perhaps if Officer Brown had had previous disciplinary encounters with his agency he would have better reacted to these issues.
Another reason the chief of police gave for terminating Officer Brown was that were he to remain on duty that he would seriously jeopardize the integrity of the department itself. It was presented that the officer's credibility would have no standing concerning any report or his testimony in any court. There was no objective evidence offered by the appointing authority to give any plausible weight to this statement. The statement, in its very kindest light, is a totally subjective evaluation.
Under no circumstances am I condoning police violence. It is imperative that the public not be subjected to any law enforcement authority with unlimited and unchecked authority. However, I am also of the opinion that each case should be looked upon with reflection of the particular and peculiar circumstances of the event in a stand-alone mode and not covered with a blanket brush. This is especially true when considering discipline or termination of police officers.
A police officer with no prior disciplinary actions against him has been given a civil death penalty for his actions in this event. This will no doubt preclude him from any further employment in law enforcement. The remedy of termination is far too harsh for an officer with no prior disciplinary history. I am of the opinion that the actions of both the appointing authority and the civil service board raise sufficient issues of bad faith and arbitrary and capricious conduct to merit reversing the rulings and remanding back with instructions to impose an appropriate suspension from duties.
APPLICATION FOR REHEARING
Before GASKINS, CARAWAY, PEATROSS, MOORE, and LOLLEY, JJ.
Rehearing denied.
GASKINS and LOLLEY, JJ., would grant rehearing.
NOTES
[1] This hearing was held on July 2, 2001. Officer Brown was questioned by Deputy Chief Dale Teutsch ("Deputy Chief Teutsch"), Major Bill Grumble and Officer John Lewis.
[2] In the dismissal letter, this provision was erroneously cited as Paragraph B; however, the contents of Paragraph D were correctly recited.
[3] Officer Brown incorrectly alleges that his right to written notification of the grounds for the disciplinary action is provided for under Article 10, § 8, of the Louisiana Constitution. The provisions pertaining to city civil service employees under Article 10 of the Louisiana Constitution, however, appear to apply only to employees of each city having a population of over 400,000. La. Const. art. 10, § 1, and art. 10, § 4. Consequently, the employees of the City of Bossier City and its instrumentalities apparently are not covered under these provisions.