671 So.2d 1261 (1996)
Gloria MAYEUX, Plaintiff-Appellant,
v.
KENTUCKY FRIED CHICKEN, Defendant-Appellee.
No. 28163-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
*1262 Hudson, Potts & Bernstein by J.P. Christiansen, Monroe, for Defendant-Appellee.
Samuel Thomas, Tallulah, for Plaintiff-Appellant.
Before MARVIN, C.J., and HIGHTOWER and GASKINS, JJ.
MARVIN, Chief Judge.
In this worker's compensation action, the claimant appeals a decision[1] of the Workers Compensation Hearing Officer rejecting her demands for benefits and penalties and attorney fees.
The primary issue is factual, whether, as the WCHO found, the defendant employer proved employment was available to claimant, within her medical restrictions, in her "reasonable geographic area." LRS 23:1221(3)(c)(I).
We affirm.

DISCUSSION
Gloria Mayeux, employed as a cashier by Kentucky Fried Chicken in Tallulah on June 16, 1992, slipped and fell in tea on the floor, spraining her right arm and injuring her back. She notified her manager of the injury and was taken to the Madison Parish Hospital emergency room.
She was treated for the lower back injury by Dr. Daniel Dare of Vicksburg, Miss. He referred her to Dr. Robert McGuire in Jackson, who recommended facet blocks to be performed by Dr. Summers of the Pain Management Center in Jackson. She was also evaluated at KFC's request by Dr. C.R. Hand, an orthopedic surgeon on October 29, 1992. He found Mayeux to be temporarily totally disabled.
KFC paid her benefits through June 21, 1993, terminating them after a vocational rehabilitation specialist identified five positions available to Mayeux in Vicksburg, which was found by the WCHO to be in the reasonable geographic area of Tallulah where Mayeux lived and worked. All five positions were described to and approved as suitable for Mayeux by her treating physician Dr. McGuire. These positions were: sales attendant with Radio Shack, delivery/order taker with Domino's Pizza, sales representative with Manufactured Housing, bench jeweler with Michael's Jewelers, and delivery/order taker with Pizza Hut. All were in Vicksburg and would pay more than 90 percent of Mayeux's pre-injury wages. Because the record clearly shows that Mayeux delayed about 14 months before contacting any of the five listed employers, we readily reject her argument that the vocational rehabilitation specialist failed to show that these positions were available to her.

Temporary Total Disability
An injured employee who is not engaged in any employment or self-employment is entitled to "compensation for temporary total disability ... only if the employee proves by clear and convincing evidence ... that [she] is physically unable to engage in any employment or self-employment, ... notwithstanding the location or availability of such employment." LRS 23:1221(1)(c).
Quoting the treatment notes of Dr. McGuire and Dr. Hand, Mayeux claims her doctors limited her, telling her not to do any stooping, bending, lifting, crawling, standing, sitting, twisting or squatting for any extended periods of time. She has had no formal education, and has only worked in sales jobs, which she argues would be prohibited by the doctors' limitations.
We disagree that she meets the requirements of LRS 23:1221(1)(c). The WCHO found that when Mayeux was interviewed by the vocational rehabilitation specialist, she felt she could not return to any employment position. Dr. McGuire, however, had released Mayeux from his medical care when she reached maximum medical improvement *1263 on March 8, 1993, opining that she could return to light duty work with restrictions on lifting, sitting, and standing. Mayeux's condition remained unchanged when she saw Dr. McGuire for re-evaluation on July 19, 1993, and February 7, 1994. Dr. McGuire approved of her working in each of the five positions the defendant's specialist found available to her. The WCHO correctly found Mayeux was not temporarily totally disabled.

Entitlement to SEBs
An employee is entitled to SEBs only if she is earning or able to earn less than 90 percent of her pre-injury wage. LRS 23:1221(3)(a). Where the employee is not earning a wage, the calculation is based on the wage the employee is able to earn in any employment she is physically able to perform and which is proven available in the community or reasonable geographic region. LRS 23:1221(3)(c)(i).
Mayeux contends that the employment positions suggested by KFC in Vicksburg are not within her reasonable geographic region because she does not have reliable transportation. She emphasizes that she and her husband, the manager of the KFC where she formerly worked, rode together to and from work.
Mayeux propounded interrogatories to the vocational rehabilitation specialist, requesting the names of the person to whom he spoke at each location. The specialist had destroyed his notes and was unable to supply that information, either in response to the interrogatories or at trial. Mayeux also emphasizes that the specialist could not provide any documentation that the jobs existed at the time he allegedly identified them. She argues he did not follow up with her on these jobs, notifying her months after they were approved by Dr. McGuire.
The WCHO's reasons for decision[2] properly concluded that Mayeux's 14-month delay in contacting the potential employers cast serious doubt on her desire to return to work. We agree. Further, the WCHO found the vocational rehabilitation specialist's testimony to be credible. Vicksburg is about 20 miles from Tallulah. This record shows that many Tallulah residents commute to gainful employment in Vicksburg. The WCHO correctly concluded Mayeux was not entitled to SEBs and that her TTD benefits were properly terminated by KFC. These factual conclusions, not being clearly wrong, also resolve Mayeux's final assignment that KFC was arbitrary and capricious in terminating her benefits.

CONCLUSION
To be entitled to the supplemental earnings benefit a workers' compensation claimant must prove her inability, because of her occupational injury or disease, to earn 90 percent or more of the wages she was receiving before her injury or disease. The critical inquiry is not whether the SEB claimant, after the occupational injury or disease, is actually offered or accepts some gainful employment, but whether she "was physically able to perform [employment] ... which is proven available to [her] in the employee's or employer's community or reasonable geographic region." LRS 23:1221(3)(c)(i). Our emphasis.
The effect of the employer's proof of the "availability" of employment within the medical limitations of the claimant is not enervated by the claimant's delay in applying for that particular employment, as in this case, or a claimant's half-hearted and unsuccessful efforts to obtain that available employment, as the WCHO found.

DECREE
At appellant's cost, the decision of the WCHO is AFFIRMED.
HIGHTOWER, J., concurs and assigns reasons.
HIGHTOWER, Judge, concurring.
Wholeheartedly agreeing with the opinion, I write in concurrence only to underscore the holding that job placement in fact, or even the actual offering of a job, is not required to prove the availability of employment. See also generally Romero v. Grey Wolf Drilling *1264 Co., 594 So.2d 1008, 1014-1015 (La.App. 3d Cir.1992).
Obviously, such a requirement would broadly invite an unmotivated claimant to discourage his own employment in positions otherwise available. In most instances, for example, a delayed effort or application will substantially reduce the chances of securing a job offer.[1] Similarly, the applicant who flaunts the fact of his prior on-the-job injury, or who simply announces a disinterest in returning to work, or who deliberately conveys slovenliness and/or an inappropriate attitude will quickly dissuade any potential employer. Such a standard would also be counter to the goal of the statute to restore, to the extent possible, injured employees to a productive role in society.
Where, as here, an employer proves that, within the reasonable geographic area, a fair number of specifically identified jobs are open, and that these fall within the claimant's physical and educational or experience capabilities, the requisites of "job availability" have been satisfied under La.R.S. 23:1221(3)(c)(i).
For a closely related discussion concerning the Longshoreman's and Harbor Worker's Compensation Act, see New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031 (5th Cir.1981).
NOTES
[1] See Walker v. ConAgra, 28,205 (La.App. 2d Cir. 4/3/96), 671 So.2d 1218.
[2] See footnote 1.
[1] On more than one occasion cases before this court have shown letters, listing medically approved and specifically identified jobs, to have been misplaced for period of time in the offices of claimants' attorneys or in the plaintiff's after home. Later, when the claimants applied after the resultant delays, none of the positions were "available".