liHIGHTOWER, Judge.
After trial in this worker’s compensation action, the hearing officer awarded maximum supplemental earnings benefits and also ordered vocational rehabilitation. The employer appeals, contending it demonstrated the availability of several jobs within plaintiffs physical capabilities and geographic region and paying more than his pre-injury wage. Finding that defendant sustained its burden in this regard, we reverse by terminating benefits two weeks past the original cessation.

Facts and Procedural History

On September 8, 1993, Aaron Banks, Jr. injured his right thumb while in the course and scope of his employment as a roofer’s helper for Industrial Roofing & Sheet Metal Works. A bundle of shingles fell on and fractured the digit, necessitating that the break be set surgically. Beyond a loss of range of motion in the thumb joint and suffering traumatic osteoarthritis, the claimant has experienced an attendant loss of grip strength that will permanently prevent him from returning to work as a roofer’s helper. Nevertheless, the treating physician, Dr. Marion E. Milstead (a specialist in hand surgery) concluded on September 7, 1994, that plaintiff could resume full-time employment at light to medium duty with restrictions against strenuous gripping or pinching. Although the physician further determined that a second surgical procedure could reduce the claimant’s pain, Banks has declined that process. Thus, based upon the former employee’s current condition and the AMA Guidelines, Dr. Milstead assessed a disability rating of 23% for the right arm, or 14% for the total body.
Immediately following the accident, Industrial began paying temporary total disability benefits at the rate of $147.13, based upon an average weekly wage of $220.69. When it became clear, in mid-1994, that Banks would be unable to return to his former employment, defendant initiated comprehensive vocational rehabilitation services. On January 25, 1995, eight weeks after discovering the availability of jobs within the claimant’s physical capabilities and geographic region that would pay more than his pre-injury wage, the employer terminated benefits with the intent of continuing rehabilitation | gif necessary. When the vocational counselor next attempted to schedule a meeting on February 9, however, Banks refused further services.
Then, claiming entitlement to temporary total disability benefits and further vocational rehabilitation, plaintiff instituted this action. Although deeming the completed rehabilitation services to be satisfactory, the hearing officer concluded that defendant had failed to establish the identified jobs as realistically available and within Banks’s physical abilities. Thus, the administrative official ordered payment of maximum supplemental earnings benefits ($147.13 per week) and continued rehabilitation services, but rejected plaintiff’s claim for penalties and attorney’s fees. This appeal ensued.

Discussion

An employee is entitled to temporary total disability benefits during the time that his injury precludes him from engaging in employment. Such compensation, neverthe *846 less, shall cease when the claimant’s physical condition has resolved itself to the point that a reasonably reliable determination of the extent of disability may be made, and continued regular treatment by a physician is not required. La.R.S. 23:1221(l)(d). In the present matter, Dr. Milstead has approved his patient for a return to work, released him from care, and assigned a disability rating. Banks, thus, is no longer entitled to temporary total disability benefits.
Supplemental earnings benefits are available to a claimant who is able to prove, by a preponderance of the evidence, that his work-related injury has rendered him unable to earn 90% of his pre-injury wages. Glascock v. Georgia-Pacific, Corp., 25,677 (La.App.2d Cir. 03/30/94), 635 So.2d 474; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991). The purpose of such an award is to compensate the injured employee for the wage earning capacity lost as a result of the accident. Glascock, supra. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that employment is generally available within the claimant’s physical capabilities and in his reasonable geographic region. Brown v. Pioneer Log Homes, 28,488 (La.App.2d Cir. 06/26/96), 679 So.2d 154; Mayeux v. Kentucky Fried Chicken, 28,163 (La.App.2d Cir. 04/03/96) 671 So.2d 1261, writ denied, 96-1133 (La.06/07/96), 674 So.2d 966; Romero v. Grey Wolf Drilling Co., 594 So.2d 1008 (La.App. 3d Cir.1992). Actual job placement, or even the offer of employment, is not necessary to prove the availability of employment. Id. If the employer’s burden is met, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii).
Likewise, during the time an employee is precluded from earning an amount equivalent to his pre-injury wage, La.R.S. 23:1226 provides for prompt rehabilitative services. The clear goal of this statute, after its amendment in 1989, is job placement with a minimum of retraining or education. Adams v. City of Shreveport, 27,284 (La.App.2d Cir. 08/23/95), 660 So.2d 127.
As previously noted, when the treating physician announced that Banks would be unable to return to his former employment, defendant initiated comprehensive vocational rehabilitation services. Janet Papworth, the assigned rehabilitation counselor, began the program by meeting with Banks on several occasions to ascertain his work history, experience, interests, and social information and, then, performing a transferrable skills analysis. Among other aspects, Banks had graduated from high school and previously served as a sergeant in the Air Force. After the doctor determined, on September 7, 1994, that the recovered employee could return to work with certain restrictions, Papworth began providing Banks with job-seeking skills. In addition to her own survey for employment on the claimant’s behalf, she instructed him regarding places to look for job opportunities, the best way to apply for a position, the amount of time to spend in the search each week, the means of documenting his search to ensure follow-up and to avoid duplication of his efforts, etc.
pBy late November 1994, Papworth had located five[1] positions falling within Banks’s physical capabilities and located in his community. Three of these jobs paid 90% of, or more than, his pre-injury wage. Particularly, the vocational counselor identified positions available for an unarmed guard at a security firm paying six dollars per hour (and also that frequently had openings), a trucking company that hired even inexperienced applicants and skilled them as tractor-trailer drivers earning approximately $500 each week, and a pest control service that had an opening for a trainee with a minimum salary of five dollars per hour.
On December 1, Papworth met with the physician, the claimant and his wife, and a representative of plaintiffs attorney to address the duties required for the various jobs *847 she had discovered. At that meeting, Dr. Milstead granted approval for his patient to pursue these three positions as well as three others which paid a lesser wage. Before discussions ended, the counselor also provided Banks with a written list of the available positions.
At trial, in claiming that the positions were no longer available, plaintiff asserted that he did not receive the list of employers until the middle of January 1995. This actually correlates to Papworth’s actions, on January 1, in finalizing and disbursing her report summarizing the prior meeting. Upon receipt of that correspondence, plaintiffs attorney forwarded it to his client, who allegedly did not get the letter at his residence until mid-month. Even so, we can ascertain no valid reason for the claimant to have waited several weeks rather than contacting the potential employers immediately following the December meeting.
Furthermore, Banks failed to make in-person (as distinguished from telephonic) contact with these companies as had been strongly recommended by his vocational counselor. Nor did he follow up any of his initial contacts, saying instead that he held to the philosophy, “Don’t call them, they’ll call me.” Papworth specifically testified that the security company frequently had openings and was always looking for good people, yet Isplaintifif chose to make only a single phone call and did not submit a written application. Indeed, in her reasons for judgment, the hearing officer commented that Banks’s lack of effort definitely contributed to his continued unemployment.
The effect of the employer’s proof of the availability of employment within the indicated medical limitations is not enervated by a claimant’s delay in making application or his half-hearted and unsuccessful efforts at obtaining employment. Mayeux, supra. See also Brown, supra; Helaire v. La. School, 95-809 (La.App.3d Cir. 12/06/95), 664 So.2d 816, writ denied, 96-0035 (La.02/28/96), 668 So.2d 369. In the instant matter, Industrial’s proof of such availability has not been rebutted by its former employee’s claim that, several weeks after learning of the positions, they had been filled. The hearing officer’s conclusions to the contrary are manifestly erroneous; defendant correctly determined that it owed no further compensation benefits. Nevertheless, in the spirit of liberal construction and application, we will extend Banks’s period of benefits until February 9, 1995, the date on which he refused further vocational rehabilitation services.
Accordingly, inasmuch as plaintiff is shown to be capable of earning wages greater than his pre-injury salary, further rehabilitation benefits are not due. Nor, contrary to the claimant’s answer, did the defendant act arbitrarily or capriciously.

Conclusion

For the foregoing reasons, the judgment of the hearing officer is reversed. We order that supplemental earnings benefits in the full amount of $147.13 per week be paid to Banks for the period between January 25 and February 9, 1995. Costs of this appeal are assessed two-thirds to claimant and one-third to defendant.
REVERSED AND RENDERED.

. Papworth originally located six job openings. One position, however, required working in Winnfield. At trial, defendant conceded that this employment opportunity should not be considered available for this claimant.