748 So.2d 1276 (1999)
Evelyn TATUM, Plaintiff-Appellee,
v.
ST. PATRICK'S PSYCHIATRIC HOSPITAL, Defendant-Appellant.
No. 32,616-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 30, 1999.
*1277 Tolar & Rossi by Collins C. Rossi, Metairie, Amy R. Veazey, Monroe, Counsel for Appellant.
D. Randolph Street, Monroe, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
In this workers' compensation action, the defendant, St. Patrick's Psychiatric Hospital, appeals a decision by the workers' compensation judge ("WCJ") in favor of the claimant, Evelyn Tatum, awarding Ms. Tatum the medical treatment recommended by her physicians, the requested travel expenses, and assigning all costs with the defendant. For the reasons herein expressed, we affirm.

FACTS
Ms. Tatum was employed as a mental health technician and phlebotomist at St. Patrick's Psychiatrist Hospital, a psychiatric facility operating within St. Francis Medical Center. On December 23, 1996, Nurse Anita Greeson, a psychiatric nurse, was attempting to administer a shot of Adavan to an agitated mental patient. Ms. Tatum assisted Nurse Greeson in securing the patient so that the drug could be administered. The patient was moved to a seclusion room. During the course of that effort, the patient wrapped her hands around Nurse Greeson's neck and began to strangle her. Ms. Tatum was able to get the patient off of Nurse Greeson. There are conflicting reports as to whether that occurred before or after the drug was administered. Also during this rage, the patient kicked Ms. Tatum in the back and stomach. As the two employees escorted the patient out of the seclusion room, Ms. Tatum testified that the patient escaped from Nurse Greeson's grasp and struck Ms. Tatum in the face three or four times propelling her head into the door. However, Nurse Greeson testified that the patient only hit Ms. Tatum one time, pushing Ms. Tatum's head into the door. Ms. Tatum sought treatment from a number of physicians.
*1278 Ms. Tatum's version of the incident differs from the version of the only witness to the accident, Nurse Greeson. As such, the defendant has denied workers' compensation coverage for certain medical treatment which claimant seeks to relate to the work incident. Specifically, the defendant has declined to approve a surgical procedure involving claimant's left knee, dental work, splints and TMJ therapy, and the correction of a deviated septum.

DISCUSSION
By assignment of error, the defendant contends that the WCJ erred in accepting Ms. Tatum's version of how the accident occurred. The defendant points out that even the WCJ admitted that Ms. Tatum's version of events was amplified "with each visit to a physician." Essentially, the defendant argues that the WCJ committed manifest error in relating the medical treatment recommended by Ms. Tatum's physicians to the incident that occurred on December 23, 1996.
A hearing officer's findings of fact in a workers' compensation proceeding may not be set aside in the absence of manifest error or unless they are clearly wrong. Beddes v. Qwik Pantry, 29,657 (La.App.2d Cir.6/18/97), 697 So.2d 695; Alexander v. Pellerin Marble and Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 361 (La.1992) (quoting Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) and emphasis supplied).
Furthermore, a claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury. Beddes, supra.
The WCJ noted that this case substantially hinged on a question of credibility. Essentially, the WCJ had to decide between the version of the accident given by Ms. Tatum and that given by Nurse Greeson. In her Written Reasons for Judgment, the WCJ stated:
An acceptance of the medical evidence in this case tilts the scale in favor of an acceptance of claimant's version of the accident. Certainly, the version of the accident as stated by Anita Greeson could not have resulted in the extent of injuries as evidenced in the medical reports...
Jurisprudence has held that a claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows a reasonable possibility of a causal connection between the accident and the disabling condition.
Based on our review of the record, we find that the WCJ did not commit manifest error in finding in favor of Ms. Tatum.
Among the inconsistencies that the defendant alleges are found in Ms. Tatum's version of the events of December 23, 1996, the defendant points out that at the time of trial, Ms. Tatum indicated that she was kicked in the stomach once, kicked in *1279 the back once and struck in the face by the patient four to five times. The defendant contends that Ms. Tatum's testimony is not consistent with the version of the accident on her 1008 form which indicates that the patient "became violent and kicked and punched plaintiff in the stomach and face. Plaintiff was propelled into the window." The defendant argues that in her first visit to the emergency room, the day of the incident, the report shows that Ms. Tatum was only kicked in the stomach and in the back. However, upon her return to the emergency room the following day, Ms. Tatum complained of vaginal bleeding as a result of the incident, even though she was diagnosed the day before with starting her period. The defendant also alleges that when Ms. Tatum was seen by Dr. Louis Gavioli, an orthopaedic surgeon, her recount of the events had changed such that she no longer claimed to have been struck in the face. Rather, the defendant points out that Ms. Tatum stated that her head was pushed down on a window.
We believe that the WCJ was best suited to determine the credibility of the witnesses and their ability to recount the events of the incident in question. As such, we defer to the WCJ's factual findings. See Bruno, supra. Furthermore, the WCJ stated in her Written Reasons for Judgment:
As noted by the defendant, claimant's version of the incident does in fact intensify and expand with each visit to a physician. However, this court cannot ignore the physical findings of the physicians and their recommended treatment. Furthermore, evidence indicates claimant was able to perform her job duties and did not experience disabling physical problems, nor problems requiring medical attention, prior to December 23, 1996.
The WCJ's findings are supported by the record. At trial, Ms. Tatum indicated that prior to December 23, 1996, she had never had any problems with her left knee nor any back problems, other than ordinary monthly cramping. Additionally, Nurse Greeson indicated that she considered Ms. Tatum to be an "excellent tech," able to perform all the duties of her job. Furthermore, the evidence shows that Ms. Tatum reported the incident to the registered nurse on duty immediately after it occurred. Thereafter, she reported to the St. Francis Medical Center Emergency Room. Ms. Tatum recounted the incident to the hospital stating that she "was working today when she reportedly was kicked by a patient. She was kicked in the back and her abdomen. She had her head pushed against the door two to three (2 to 3) times." Ms. Tatum reported pain in her back, her lower back, and her abdomen. She also reported a headache and a loosened tooth. The WCJ noted that "the history provided the hospital is consistent with claimant's version of the accident as stated to this Court."
On January 9, 1997, Dr. Gavioli examined Ms. Tatum for the first time. Dr. Gavioli noted that Ms. Tatum complained of several episodes of walking along and her left leg giving way. Dr. Gavioli further noted that if the left leg weakness persisted, he might consider an MRI. The evidence reveals that since that time, Ms. Tatum has continued to suffer from the left knee and leg weakness, often reporting to her orthopaedic surgeon that her leg gives way while walking.
Eventually, Dr. Gavioli referred Ms. Tatum to Dr. David Trettin, who works at the same orthopaedic clinic as Dr. Gavioli. Dr. Trettin diagnosed Ms. Tatum with a patellar subluxation. In his notes, after admitting that Ms. Tatum has "been doing everything we've told her to do" to no avail, Dr. Trettin recommended surgery on Ms. Tatum's left knee to repair the patellar subluxation.
Ms. Tatum also sought treatment from Dr. George E. Rogers, her dentist, on December 26, 1996. In a letter dated February 25, 1997, Dr. Rogers referred to his December 1996 examination of Ms. Tatum where he found that Ms. Tatum had a fractured tooth, was experiencing pain and stiffness in her jaw, and was unable to *1280 open very wide. He further noted that "in follow up examinations the muscles have continued to stiffen to a point where she is unable to open wide enough to complete her dental treatment." Dr. Rogers pointed our that during her appointment dated February 10, 1997, Ms. Tatum's jaw locked for a few minutes and treatment had to be discontinued. Dr. Rogers referred Ms. Tatum to an orthodontist, Dr. G. Randall Wright. Dr. Wright diagnosed Ms. Tatum as having left TM dysfunction possibly secondary to trauma. His recommended treatment involves an orthotic appliance (occlusal splint) to reduce occlusal pressure on the left TM joint. Dr. Rogers also referred Ms. Tatum to Dr. Lance Donald who performed a root canal on Ms. Tatum because of a tooth that was dislodged during the December 1996 incident.
At trial, Ms. Tatum testified that since the date of the incident in question, her nose bleeds and is constantly "stopped up." On April 28, 1997, Ms. Tatum sought treatment from Dr. Lawrence J. Danna, an ear, nose and throat specialist. She related to Dr. Danna that she was involved in an incident at work on December 23, 1996. She reported that she had been "kicked in the face and jaw by a patient." Furthermore, she stated that following the incident she blew her nose and a large clot of blood came out of her nose. Upon examination, Dr. Danna diagnosed a deviated septum and recommended surgery.
Based on the foregoing and the evidence presented at trial, we believe that Ms. Tatum was able to perform her job duties prior to the accident on December 23, 1996, and that it was only after that incident occurred that she began suffering from the symptoms just described. We find no merit in the defendant's assignment of error. As such, we agree with the WCJ's finding that Ms. Tatum is entitled to receive the medical treatment as recommended by Dr. Gavioli, Dr. Danna, Dr. Wright, Dr. Rogers, and Dr. Donald.

CONCLUSION
We hereby affirm the decision of the WCJ at appellant's costs.
AFFIRMED.