902 So.2d 1264 (2005)
George COLLINS, Plaintiff-Appellant
v.
PATTERSON DRILLING and Liberty Mutual Insurance Company, Defendants-Appellees.
No. 39,668-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*1265 Street & Street, by C. Daniel Street, Monroe, Monroe, for Appellant.
Mayer, Smith & Roberts, by Kim P. Thomas, Shreveport, Shreveport, for Appellees.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
George Collins, a workers' compensation claimant, appeals a judgment denying his demands for temporary total disability *1266 benefits (TTD's) or supplemental earnings benefits (SEB's), medical treatment, and penalties and attorney fees for the failure to provide medical treatment and failure to pay TTD's or SEB's. Collins' employer, Patterson Drilling Company, and its insurer, Liberty Mutual Insurance Company (referred to collectively as "defendants"), answered Collins' appeal to assert error in the award of penalties and attorney fees for their failure to provide a functional capacity evaluation (FCE) for Collins. Finding legal error in the denial of Collins' claim for disability benefits, we vacate that part of the judgment and remand for a new trial on Collins' entitlement to disability benefits. In all other respects, the judgment is affirmed.

FACTS
While employed as a roughneck by Patterson Drilling Company on December 12, 2001, George Collins injured his knees when he slipped and fell on a muddy, wet floor. Although he immediately reported the accident, Collins did not see a doctor until December 27, 2001, when he was examined by Dr. Eddie Ulmer in Meridian, Mississippi. Collins resides in Mississippi, but he was employed in Louisiana.
Dr. Ulmer referred Collins to Dr. Gustavus Rush, an orthopaedic surgeon, who began treating Collins on January 22, 2002. An MRI showed degenerative changes in both knees as well as a meniscus and ACL ligament tear in the right knee. Dr. Rush performed surgery on Collins' right knee and treated him until September 2002, when Collins was advised to return as needed. Dr. Rush's records indicate that he believed no further surgery was needed and that Collins could return to work in some capacity.
Collins sought further treatment from Dr. Keith P. Melancon, another orthopaedic surgeon. Dr. Melancon began treating Collins in November 2002. Contrary to Dr. Rush's conclusion, Dr. Melancon believed that Collins would benefit from additional surgery to both knees and should not return to work. Based on Dr. Rush's report, defendants had ceased payment of temporary total disability benefits to Collins as of December 2002. Though notified that Collins had obtained a second opinion from Dr. Melancon that conflicted with Dr. Rush's opinion as to Collins' condition, defendants did not reinstate TTD's. Additionally, defendants denied approval for Collins to be treated by Dr. Melancon.
Collins filed a "Disputed Claim For Compensation" on April 28, 2003, seeking reinstatement of TTD's and treatment by Dr. Melancon. An independent medical exam ("IME") of Collins was ordered. Dr. Terry L. Habig, an orthopaedic surgeon, examined Collins on November 17, 2003. Dr. Habig concluded that Collins had reached maximum medical improvement with regard to his knee injuries and the surgery on his right knee. He did not believe that Collins would particularly benefit from more surgery. However, he did conclude that Collins will have limitation of activity, and he recommended performing a functional capacity evaluation ("FCE") to determine the extent of his limitations.
The workers' compensation judge ("WCJ") heard Collins' claim on March 24, 2004. Collins testified that he attempted to return to light duty work for a week in January 2002 while under Dr. Ulmer's care. However, he did not return to work after being referred to Dr. Rush. Collins insisted that Dr. Rush never released him to return to his full duties as a roughneck. Rather, Dr. Rush advised him to try light duty or else find another occupation. Dr. Rush also restricted his climbing, stooping, and bending. Even at the time of his last visit with Dr. Rush in September 2002, Collins was still experiencing pain and *1267 problems with his right knee. He could not put pressure on the knee, he stumbled when walking, and he had problems squatting and walking on steps. Collins sought a second opinion from Dr. Melancon. He asked Patterson and its insurer to provide treatment by Dr. Melancon, but no authorization was ever given. Collins testified that he can no longer work as a roughneck due to his ongoing knee problems. He has not been offered any vocational or job services. He has not attempted to return to work since the surgery, nor has he looked for other employment.
Collins' wife, Barbara Collins, testified that her husband did not have problems with his knees prior to the accident and that he has not been able to do much since the accident. She testified that he stumbles when walking and can hardly make it up steps. She has observed his right knee give out causing him to stumble. Both she and Collins insisted that Dr. Rush recommended surgery for Collins' left knee but would not provide it unless Collins paid. They claimed that Dr. Rush indicated that workers' compensation had paid enough.
The WCJ reviewed the medical records of Dr. Rush and Dr. Melancon, the IME report of Dr. Habig, and other exhibits prior to making her ruling. In assessing the medical evidence, the WCJ determined that as treating physician, Dr. Rush's opinion should be given greater weight than the other doctors. She noted that Dr. Rush had treated Collins for nine months and released him to return to his job. The WCJ also noted that Dr. Habig agreed with Dr. Rush that Collins had reached maximum medical improvement and would not benefit from further surgery. Applying La. R.S. 23:1221(1)(d), the WCJ concluded that upon reaching maximum medical improvement and being released to return to work, Collins was no longer entitled to TTD's. The WCJ also concluded that there was no evidence to support a claim for SEB's. However, she ordered defendants to provide the FCE recommended by Dr. Habig and ordered Collins to then return to Dr. Habig for additional assessment of his limitations. She reserved Collins' right to assert a claim for SEB's if warranted by the findings of the FCE.
The WCJ denied Collins' claim for medical treatment by Dr. Melancon. Collins' choice of physician had been Dr. Rush, and he had not obtained approval to change physicians in the same specialty. The WCJ believed that ordering defendants to provide treatment by Dr. Melancon would be tantamount to condoning "doctor shopping" and would go beyond the reasonable and necessary medical services required by the workers' compensation law.
The WCJ denied Collins' claim for penalties and attorney fees due to defendants' termination of TTD's and denial of medical treatment by Dr. Melancon. She concluded that the defendants' reliance on Dr. Rush's opinion was proper and that they were neither arbitrary nor capricious in denying medical treatment when Collins had previously chosen Dr. Rush as his physician in the specialty of orthopaedics and had not obtained approval to change physicians. However, the WCJ did award a penalty of $500 and attorney fees of $2,000 for the defendants' failure to provide the FCE recommended by Dr. Habig.
Following the judgment rendered in accordance with the WCJ's ruling, Collins appealed the denial of his claims for TTD's, medical treatment, and penalties and attorney fees. The defendants answered the appeal to challenge the WCJ's ruling on the FCE.

DISCUSSION
The manifest error or clearly wrong standard governs appellate review *1268 in workers' compensation cases. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. Under the manifest error standard, the appellate court must determine whether the WCJ's factual findings are reasonable in light of the record reviewed in its entirety. Pugh v. Casino Magic, 37,166 (La.App. 2d Cir.4/11/03), 843 So.2d 1202, rehearing denied. However, where there is manifest error or an error of law, the WCJ's decision is owed no deference by the reviewing court and may be overturned. Roan v. Apache Chemical Transporters, 37,671 (La.App. 2d Cir.9/24/03), 855 So.2d 920.
This court has stated that "the workers' compensation act is remedial in nature and that in order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee." Roan, 855 So.2d at 923. However, statutory provisions allowing penalties and attorney fees are penal in nature and must be strictly construed. Tron v. Little Italiano, Inc., 38,556, 38,557, 38,558 (La.App. 2d Cir.6/25/04), 877 So.2d 1055.

Disability Benefits
Collins appeals the denial of his claim for TTD's or SEB's. He also appeals the WCJ's denial of penalties and attorney fees for the defendants' termination of the TTD's that they had been paying. The defendants appeal the WCJ's order requiring them to provide an FCE for Collins and the assessment of a penalty and attorney fees for their failing to have provided the FCE. We will address these issues together because all are related to the determination of Collins' condition and whether he is entitled to disability benefits.
To obtain an award of TTD's, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(1)(c); Mayeux v. Kentucky Fried Chicken, 28,163 (La.App. 2d Cir.4/3/96), 671 So.2d 1261, writ denied, 96-1133 (La.6/17/96), 674 So.2d 966. This is the standard of proof which a claimant must satisfy when he files a disputed claim form seeking an award of TTD benefits after the employer or insurer terminates voluntary payments of TTD's. See Mayeux, supra; Baker v. Davison Transport, 26,164 (La.App. 2d Cir.9/21/94), 643 So.2d 278; Miller v. Byles Welding & Tractor Co., 96-164 (La.App. 3d Cir.6/5/96), 676 So.2d 665; and Fowler v. St. Charles Hospital, 630 So.2d 293 (La.App. 5th Cir.1993), writ denied, 94-0248 (La.3/18/94), 634 So.2d 860. In the case sub judice, Collins filed a disputed claim form seeking TTD benefits which defendants had voluntarily paid and then terminated after receiving a medical report indicating that Collins had reached maximum medical improvement. As in the cases cited above, Collins' claim for TTD benefits should have been analyzed under the standard of proof set forth in La. R.S. 23:1221(1)(c).
Review of the record shows that the WCJ applied La. R.S. 23:1221(1)(d), which addresses when an award of TTD's shall cease, to determine Collins' entitlement to TTD's. La. R.S. 23:1221(1)(d) states as follows:
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.
*1269 In Murray v. Hollywood Casino, 38,539 (La.App.2d Cir.6/23/04), 877 So.2d 199, this court interpreted La. R.S. 23:1221(1)(c) as applicable when the employee first seeks TTD's and determined that La. R.S. 23:1221(1)(d) applies when determining the point at which the benefits should terminate.
At issue is whether Collins is entitled to an award of TTD's or other benefits. La. R.S. 23:1221(1)(d) governs when an "award of benefits" shall cease. Thus, the WCJ's reliance on La. R.S. 23:1221(1)(d) in denying Collins' claim for TTD's is legal error. The WCJ's findings regarding Collins' claim for TTD's is owed no deference on review. When legal error interdicts the fact-finding process in a workers' compensation proceeding, the manifest error standard of review no longer applies. Rather, the appellate court must, when possible, review the facts de novo and render a judgment on the merits. Kelley v. Stone Container Corp., 31,790 (La.App. 2d Cir.5/5/99), 734 So.2d 848, writ denied, 99-1969 (La.10/15/99), 748 So.2d 1150.
We do not find this matter to be in a posture which would allow us to conduct a de novo review and render a judgment on the merits of whether Collins is entitled to TTD's or other disability benefits. This is due to the incompleteness of information in the record regarding Collins' limitations. Dr. Habig concluded that Collins will have limitation of activity. Dr. Habig recommended performing an FCE to determine the extent of Collins' limitations. Without the FCE and further evaluation of Collins' limitations by Dr. Habig, the IME report is incomplete. The primary issue is whether Collins is physically unable to engage in any employment such that he may be entitled to TTD benefits. Assessment of Collins' limitations is essential to the WCJ's resolution of whether Collins is entitled to disability benefits. As such, we must remand this matter for a new trial on Collins' entitlement to disability benefits once the FCE and Dr. Habig's further evaluation is done. A new trial will also allow the WCJ to assess Collins' claim in accordance with La. R.S. 23:1221(1)(c).
In answer to the appeal, defendants assert that the WCJ erred in ordering them to provide the FCE recommended by Dr. Habig and in ordering Collins to then return to Dr. Habig for additional assessment of his limitations. They further contend that the WCJ erred in assessing them with $500 in penalties and $2,000 in attorney fees for their failure to provide the FCE. We find no merit in the defendants' arguments.
Dr. Habig's report indicated that Collins would have limitations and that an FCE would have to be done to determine the extent of his limitations. We find that the FCE is necessary to allow Dr. Habig, as the independent medical examiner, to render an opinion as to the medical and legal issues in this matter as required under La. R.S. 23:1317.1. Contrary to defendants' arguments, ordering the FCE and further evaluation does not constitute an appointment of Dr. Habig as Collins' treating physician. Rather, the WCJ's order allows Dr. Habig to fulfill his responsibilities to the court and the parties. The defendants' refusal to provide the FCE was arbitrary and capricious in light of Dr. Habig's explicit recommendation and the relevance that a determination of Collins' limitations has in this matter. Accordingly, we find no error in the WCJ's order regarding the FCE and her assessment of penalties and attorney fees against the defendants.

Medical Treatment
Collins also appeals the WCJ's denial of his demands for medical treatment *1270 by Dr. Melancon and for penalties and attorney fees due to their failure to approve such treatment. Collins argues that he sought treatment from Dr. Melancon for ongoing knee problems and that Dr. Melancon treated his right knee with injections. He contends that Dr. Rush had suggested the same type of injections as further treatment that might be needed. For these reasons, Collins asserts that the WCJ erred in not ordering defendants to provide medical treatment by Dr. Melancon.
An employer must furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the state as legal. La. R.S. 23:1203(A); Baker v. Davison Transport, supra. Jurisprudence provides that an employee seeking payment for medical or surgical treatment must prove that the expenses are reasonably necessary for treatment of a medical condition caused by a work-related injury. Tatum v. St. Patrick's Psychiatric Hosp., 32,616 (La.App. 2d Cir.12/30/99), 748 So.2d 1276, writ denied, XXXX-XXXX (La.3/24/00), 758 So.2d 157; Hill v. Manpower-Collier Investments, 30,444 (La.App. 2d Cir.4/8/98), 712 So.2d 560. An employee is allowed to select one treating physician in any field or specialty. But after his initial choice of treating physician, he must obtain prior consent from the employer or workers' compensation insurer to change treating physician within the same field or specialty. La. R.S. 23:1121(B)(1); Baker v. Davison Transport, supra.
The record shows that Collins sought further treatment from Dr. Melancon after being released by Dr. Rush to return to work. Dr. Rush treated Collins from January 2002 to September 2002. Records of Collins' last visit with Dr. Rush on September 17, 2002, state that Collins was still experiencing some pain and tenderness but that he had done quite well with the surgery. Dr. Rush did not feel that additional surgery was "indicated on the left knee at this time."
Collins then sought treatment from Dr. Melancon on November 1, 2002, and followed up for injections in January, February, and March of 2003. He was again examined by Dr. Melancon on July 15, 2003. Dr. Melancon's records indicate that he believed Collins would require total bilateral knee replacements "at some point."
Finally, Dr. Habig examined Collins on November 17, 2003, and reviewed the patient history record and records of Dr. Rush. Dr. Habig concluded that Collins had reached maximum medical improvement of his knee injuries and surgery. He also concluded that Collins would not benefit from surgery to his left knee or additional surgery to his right knee.
Although no evidence was presented, the record and Collins' appellate brief indicates that defendants paid Dr. Melancon's medical expenses prior to the hearing but that they have not approved further treatment by Dr. Melancon. From our review of this record, we cannot say that the WCJ was manifestly erroneous in denying Collins' claim for medical treatment, penalties, and attorney fees. Collins' treating physician, Dr. Rush, concluded that Collins had reached maximum medical improvement and that further surgery was not necessary. Dr. Habig reached the same conclusion. Dr. Melancon only recommended that knee replacement surgery might be necessary "at some point." This evidence does not establish that further medical treatment, particularly surgery as suggested by Dr. Melancon, is reasonably necessary at this time for Collins' work-related knee injury. Therefore, we affirm the trial court's judgment as to the denial of *1271 Collins' claim for medical treatment as well as for penalties and attorney fees for defendant's failure to approve and provide treatment by Dr. Melancon.

CONCLUSION
For the reasons stated, we vacate that part of the trial court's judgment denying Collins' claim for disability benefits, and we remand the matter for a new trial to be held once the FCE is performed and Dr. Habig, the independent medical examiner, completes his report to address the extent of Collins' limitations. In all other respects, the judgment is affirmed. Appellant and appellees are each assessed with half the costs of appeal.
AFFIRMED IN PART. VACATED IN PART AND REMANDED FOR A NEW TRIAL.